THIRD NAT. BANK *et al. v.* COHN *et al.*

(*Nashville,* December Term, 1952.)

Opinion filed January 15, 1953.

J. CARLTON LOSER, of Nashville, for appellants and cross-appellees.

638

Thomas G. Watkins and Watkins, Moore & Crown-over, all of Nashville, Watkins & McCall, of Nashville, of counsel, Ward DeWitt, Jr., of Nashville, guardian ad litem, for appellees and cross-appellants.

Mr. Justice Tomlinson delivered the opinion of the Court.

The motion of Cohn to dismiss the appeal of Third National Bank, co-executor, etc., on the ground that its two assignments of error do not meet the requirements of our Rule 14, sub-sections 2 and 3, is denied. The failure to literally comply is not so flagrant as to justify an action so drastic. See *Renner* v. *State,* 187 Tenn. 647, 216 S. W. (2d) 345.

Charles Cohn died testate in March of 1950. His will named his wife, Blanche Stern Cohn, and his son, Paul S. Cohn, and the Third National Bank in Nashville as co-executors and co-trustees of his estate. The three promptly qualified and entered into the administration of the estate. The widow has since died, and the affairs of the estate are being carried on by the surviving ex-

ecutors and trustees named in the will. They are apparently now ready to make settlement as executors, but a disagreement arose between them as to whether Paul S. Cohn is entitled to any compensation for his services as co-executor. This disagreement arose by reason of the contrary constructions which they place upon the following clause of the testator's will:

"I have made an agreement with the Third National Bank in Nashville in regard to its compensation as Executor and Trustee hereunder, and it is my wish that the other two Executors and Trustees do not charge or receive any compensation for their services."

It will be noticed that in the above quoted clause the testator says that "it is my wish that" his widow and son not charge or receive compensation for their services as executors and trustees. The Third National Bank thought that the word "wish" was used by the testator in the sense of a command; hence, that Paul S. Cohn cannot charge or receive anything as compensation for his services as co-executor or trustee. Cohn, on the other hand, construed this language to mean that it was left optional with him as to whether he would charge for his services.

The Bank, in order to be relieved of any risk incident to an erroneous construction of the aforementioned clause of the will, filed its bill to procure a judicial construction. Cohn answered and filed a cross-bill which need not here be discussed. On motion, the matter was heard by the Chancellor on the pleadings and he entered a decree wherein he adjudged, without any elaboration, that the words found in the heretofore quoted clause "are mandatory and obligatory, and are not precatory;

and that it was not the intention of the testator by the use of these words to leave the matter of compensation optional with his son, Paul S. Cohn''. Cohn has appealed to this Court.

The clause in controversy states that the testator had made an agreement with the Bank as to its compensation as executor and trustee. That agreement reads as follows:

''We hereby agree that, in consideration of your appointing the Third National Bank in Nashville as Executor and Trustee under your will, our compensation as Executor shall be two and one-half per cent ($2\frac{1}{2}\%$) of the estate, and our compensation as Trustee shall be two and one-half per cent of the gross income of the trust estate as long as your son, Mr. Paul S. Cohn, actively assists us in the management of the real estate; in the event that Mr. Paul S. Cohn should remove from the City or for any other reason should be unable to give us his active assistance, our compensation shall be from that time on five per cent (5) of the income.

''This shall comprise our entire compensation.''

The procuring by the testator of the aforementioned agreement with the Bank suggests, per se, an inquiry as to why this careful business man did not likewise procure an agreement from his son, if it was his intention that his son must serve, if at all, without compensation. He was in a position at that time to get such an agreement because this son was the object of his bounty. He necessarily knew that he had no legal right to require these services without compensation. Nothing else appearing, the fact that the testator made this agreement with the Bank before appointing it, but made no agree-

ment with his son before appointing him, is an extrinsic circumstance which may reasonably be said to refute the suggestion that the testator used the word "wish" in the sense of a command.

In *Smith* v. *Reynolds,* 173 Tenn. 579, 592, 121 S. W. (2d) 572, 577, this Court took notice of the generally known fact that "The definition of the precatory word 'wish' does not, according to its ordinary use, embrace a command". In the subsequent case of *Comford* v. *Cantrell,* 177 Tenn. 553, 556-557, 151 S. W. (2d) 1076, 1077, the Court commented upon the "change in the trend of authority as to the force of precatory words" and quoted from Bogert to the effect that the American Courts have adopted the view of attributing to precatory words their natural meaning unless extrinsic circumstances or other portions of the will justify the conclusion that a precatory word was used in the sense of a command.

There is nothing within the four corners of this will, in so far as we can detect, that would enable us to find that the testator intended the word "wish" to be given an unnatural meaning. Therefore, to borrow the language of the Court in *Smith* v. *Reynolds,* supra, it may very well be said that, as to this will, the Court would be trading "a certainty for a doubt" should it give testator's expression "wish" the unnatural meaning claimed for it.

Had Cohn refused to serve as executor and trustee the compensation of the Bank as to the trust estate would be doubled. The agreement so provides. The very language of the will indicates that the testator contemplated that the trust would continue for many years. Its creation and administration is the principal object and achievement of this will. This will discloses that the

testator had great confidence in his son's judgment in the administration of that trust so long as this son lived. For instance, in the first clause of Item VI the will provides this:— "* * * valuations placed by the Trustees upon the property shall be conclusive and binding upon all interested parties, provided that either my son or my wife, or both, are then acting as Co-Trustees; otherwise divisions in kind will be made only acceptably to the interested parties." It is hardly reasonable to think that the testator intended for this son (1) either not to serve at all or (2) to serve without any compensation, when he, the testator, knew that the trustee's commissions would be doubled if this son declined to serve. Nor is it logical to think that this father would have preferred for the Bank to be paid double than for his son to be paid anything. Yet such is the result if the word "wish" is given the unnatural meaning of a command sought to be attributed to it, because the word applies to executors as well as trustees.

Counsel for the complainant appellee has cited numerous cases from numerous states wherein the precatory word used in the will was construed in the sense of being a command. No doubt the Court felt justified by other language in each of those wills to so construe such word. As heretofore pointed out, there is no language in Cohn's will to justify such a departure from the natural meaning of the word used. Moreover, in each of those cases it seems that the word was used with reference to a matter as to which the testator had the legal right to command. In this case the testator had no legal right to command his son to serve without compensation. He had the right to make his appointment conditioned on serving without compensation, as was done in the District of

Columbia case cited by counsel. But in this case the testator provided no such condition.

Mr. Cohn's will, per se, demonstrates that its draftsman was a person who knew the meaning of words. The provisions of the will, and the success which Mr. Cohn had in life, justify the conclusion that he, too, well knew the meaning of words such as "wish". Had it been intended to command this son to serve without compensation, if at all, it is reasonable to think that appropriate words would have been used without being impolite (as suggested in brief) to this son.

For all the reasons stated, the conclusion of this Court is that the will properly construed meant to make it optional with Paul S. Cohn as to whether he would charge the estate for his services as co-executor and co-trustee, the testator merely expressing the hope that he would not exact a charge.

It is insisted for the Bank that Paul S. Cohn by entering into the discharge of his duties as co-executor and co-trustee waived his right to compensation. On the other hand, he would not have been entitled to compensation had he not entered into the performance of these duties.

The Chancellor fixed the compensation of J. Carlton Loser for his services in this case to the Executor bank. Co-executor Paul S. Cohn has assigned as error the order directing that this compensation be paid out of the estate, and bases his insistence upon the fact that Mr. Loser was attorney general for the Nashville District at the time he performed these services. He cites Section 9969 of the Code Supplement. This section prohibits district attorney generals from practicing law "except in such cases as they may have been employed as counsel

of record, which were pending in court September 1, 1950."

Cohn's will was probated in March of 1950. General Loser was at that time engaged as counsel of record for this estate, the settlement of which is still pending in Court. Code Section 9969.1 is not, therefore, applicable to General Loser's services in this case.

The Chancellor fixed the compensation of the solicitor who represented Paul S. Cohn, individually and as co-executor and co-trustee in this suit. The co-executor Bank has assigned as error the action of the Chancellor in directing that this fee be paid out of the corpus of the estate. Its insistence is that this was error, as the services were rendered for the benefit of Mr. Cohn individually, rather than for the benefit of the estate. We went over this question in *Gilpin* v. *Burrage,* 188 Tenn. 80, 216 S. W. (2d) 732. We were there dealing with whether an attorney who had not been employed by the estate was entitled to have his fees paid out of its funds. In that situation it was said, 188 Tenn. at page 89, 216 S. W. (2d) at page 736, that:

"* * * the test by which the question is to be determined is whether the services rendered enure to the benefit of the entire estate as distinguished from services that enure to the benefit of one or more of the individuals interested in the estate or trust".

There seems to be no escape from the conclusion that this suit arose out of the fact that the co-executor Bank and the attorney for the estate construed the will as meaning that Mr. Cohn could not receive any compensation for his services as co-executor or trustee. Mr. Cohn, in resisting that construction, was acting solely for his own benefit. The benefits which have resulted enure to

him individually. Nor is any one else benefited. Under the rule above stated, therefore, the compensation for the services rendered by his solicitor should be paid by him individually, and not by the estate, unless as co-executor and trustee Cohn had authority to employ counsel to present his views as to a proper construction of this will.

A codicil to this will, the codicil being dated February 23, 1950, provides, in so far as pertinent here, the following:

"I further desire and direct that J. Carlton Loser, Esq., shall be employed as sole attorney and counsel for my executrices and trustees in the probate of my Last Will and Testament, as well as in connection with the management and settlement of my estate, including execution of the trusts set out therein."

It necessarily follows that under the express language of the will Cohn as co-executor and co-trustee was without authority, under the circumstances of this case, to employ counsel at the expense of the estate. This is a debt owed by Cohn individually to his attorneys for the payment of which these attorneys are entitled to have a lien declared on the compensation due or to become due Cohn for his services as executor and trustee.

Each of the attorneys and the guardian ad litem has asked this Court to fix the compensation for the services rendered their respective clients on this appeal. Since Cohn has been adjudged individually liable for the fee owed his attorney our action in this respect can only be justified, as it probably is, on the theory that a fund belonging to Cohn was recovered or is in the course of recovery by reason of the services rendered him, that fund being the compensation to which he is or will be entitled for services as co-executor and co-trustee. In the Chan-

cery Court the compensation allowed was (1) to General Loser $3,000, (2) to Mr. Watkins, attorney for Cohn, $2,500, and (3) to Mr. Ward DeWitt, Jr., Guardian Ad Litem, $750. We think a reasonable compensation for the additional services rendered in this Court by General Loser is $500 and by Mr. DeWitt, $125, to be paid out of the corpus of the estate; an additional fee of $500 to Thomas G. Watkins, to be paid individually by Paul S. Cohn for the payment of which let a lien be declared on the compensation to which he is entitled or to become entitled for his services as co-executor and co-trustee.

The decree of the Chancellor will be modified in the respects mentioned, and as so modified will be affirmed. Cost of the appeal will be adjudged against the co-executors, as such, of the Cohn estate, to be paid by them out of the corpus of that estate.

NEIL, C. J., did not participate in the consideration of this case.