MRS. THOMAS J. (MIDGE) MARLER, Appellant and Cross-Appellee,

*v.*

CHARLES L. CLAUNCH, the American National Bank and Trust Company of Chattanooga, Tennessee, Executors of the Estate of Thomas J. Marler, Deceased, Judith Ann Marler Allen and Nancy Marler Dykers, Appellees and Cross-Appellants.

430 S.W.2d 452.

(*Knoxville,* September Term, 1967.)

Opinion filed July 12, 1968.

694

BELL, WHITSON, PAINTER, McMURRAY & CALLAWAY, Cleveland, ROBERT L. McMURRAY, Cleveland, of counsel, for appellant and cross-appellee.

CHARLES L. CLAUNCH, Chattanooga, for appellees and cross-appellants.

Mr. Justice Creson delivered the opinion of the Court.

This is a declaratory judgment suit filed by the widow of Thomas P. Marler, Deceased, pursuant to T.C.A. sec. 23-1101 et seq. The suit was originally filed against Charles L. Claunch and The American National Bank and Trust Company of Chattanooga, Tennessee, as Executors; but, thereafter, the deceased's two daughters were joined as defendants on motion to amend by the complainant. All of the defendants filed answers; and the parties have agreed on certain stipulations of fact. The case was heard before the Chancellor upon the pleadings and the written stipulations of fact. Both parties have perfected an appeal from the decision of the Chancellor. The case comes directly to this Court in accordance with the provisions of T.C.A. sec. 16-408.

The parties will be referred to herein as they appeared in the lower court; that is, appellant and cross-appellee Mrs. Thomas J. (Midge) Marler, as complainant, and Charles L. Claunch and other named appellees and cross-appellants as defendants.

This suit was filed to seek answers to certain questions alleged to be necessary for proper disposition of the Estate of Thomas J. Marler, Deceased. These answers

require examination of (1) the application of the 1967 Amendment of T.C.A. Title 30, Chapter 8 regarding "Allowances to Family"; (2) the effect of the provision in the will exonerating the widow's share of all payment of death taxes; and (3) the question of whether the payment of fees of complainant's solicitor is properly to be allowed out of the estate of the decedent.

The facts in this case are stipulated and may be summarized:

On August 18, 1966, Thomas P. Marler divorced his wife of forty years, Hazel W. Marler. Less than a month later, on September 8, 1966, Mr. Marler executed his will. By his will, he bequeathed certain named personal property to his two daughters; placed the proceeds from named insurance policies and all real estate in trust to provide his ex-wife with a $1,000.00 per month allowance; and devised the rest and residue to his daughters. On March 11, 1967, the complainant and Mr. Marler were married. Shortly thereafter, on April 23, 1967, Mr. Marler died. His will was probated on May 1, 1967. Three days later, on May 4, 1967, the complainant filed her dissent from the will.

On July 29, 1967, the complainant filed this bill for declaratory judgment, and prayed (1) that she be allowed to proceed under the new law regarding allowances to family, enacted by the Tennessee Legislature as Chapter 146, Public Acts of 1967, effective May 1, 1967; (2) that she be declared entitled to receive her share of the estate free and clear of State inheritance taxes and Federal estate taxes; and (3) that the costs and fees of her counsel be adjudged against the estate.

The Chancellor filed his memorandum opinion on December 18, 1967. That opinion, incorporated into his decree of January 10, 1968, held (1) that the substantive rights of the complainant are governed by the law of Tennessee as it existed prior to the enactment and effective date of Chapter 146, Public Acts of 1967; but the procedure to be followed by the complainant in asserting her rights as dissenting widow is governed by the new Act; (2) that, pursuant to the terms of the will, all Federal estate taxes and all State of Tennessee inheritance taxes are to be charged against the residuary estate, and none against the complainant; and (3) that the complainant's solicitors should be awarded a reasonable fee from the estate.

The complainant's sole assignment of error raises the issue of whether her right as dissenting widow to "Allowances to Family" under T.C.A. Title 30, Chapter 8, is governed by the statute in effect at the death of the decedent, or by the statute in effect at the time of probate of the will and subsequent dissent of the widow.

On May 1, 1967, the Act of the Legislature, amending Chapter 8 of Title 30, came into effect. That Act deleted the existing Chapter 8 and substituted, in its stead, a completely revised Chapter on allowances to the family in the administration of decedents' estates. The Chancellor held that the right of a widow to a year's support became vested upon the death of the husband; and consequently, a subsequent Act of the Legislature could not increase what the widow would receive, but it could direct the procedure by which to set it aside and preserve it to her. The complainant widow argues that these rights were inchoate only; and thus, that the Legislature could prescribe new rights and remedies until the inchoate

interest had been perfected. She contends that, in the present case, her inchoate rights as a dissenting widow had not been fixed so as to render them legally immune to change.

■ This Court held, in one of its very early decisions, that "The law, as it exists at the time of the death of a member of society, fixes the rights of parties; * *." *Officer v. Young* (1883) 13 Tenn. 320. It may generally be said that all substantive rights in the estate, be they vested or inchoate, are controlled by the law existing at the time of death.

■■ The right of a widow to claim the benefits of allowances to family under T.C.A. Title 30, Chapter 8, as a dissenting widow, or as a widow of an intestate husband, exists as of the date of death, although the realization may be postponed until appropriate steps are taken. It is at the time of death that the entire substance of the right is fixed, though the procedural mechanics for its realization are subject to change by subsequent legislative directive. That permissible change, however, only relates to the procedure necessary to obtain that substance already fixed as the date of the testator's death.

■ Much is said by defendants with respect to the prospective or retrospective application of the statute regarding marital rights. The complainant argues that her rights were inchoate only, and thus subject to enlargement by the Legislature. No help in reaching a solution can be gained by debating the legal meaning of "inchoate"; for the argument is settled in this State by the antecedent rule that a statute is regarded as prospective only unless the Act clearly indicates that the Legislature intended retroactive application. *Jennings*

*v. Jennings* (1932) 165 Tenn. 295, 54 S.W.2d 961; *Shannon v. Board of Education of Kingsport* (1955) 199 Tenn. 250, 286 S.W.2d 571, and other cases there cited.

It results from what has been said above that the Chancellor properly concluded that the substantive rights of the dissenting widow were governed by the law in effect at the time of death of the decedent; but that the procedural steps to be followed are as set forth by the law in effect at the time the complainant sought to enforce those rights.

■ The defendants first assign as error that the Chancellor erred in holding that the widow should not be charged with any of the inheritance or estate taxes. They argue that the effect of this decree violates the purpose and intent of the testator and is in conflict with the provisions of the controlling statute, T.C.A. sec. 30-1117.

T.C.A. sec. 30-1117 directs the manner in which death taxes are to be paid. It provides, in part:

"30-1117. *Federal estate taxes to be prorated equitably among beneficiaries and persons interested in estate.*— Whenever the personal representative of an estate has paid an estate or death tax to the government of the United States under any federal tax law now in effect or hereafter enacted by congress, upon, or with respect to, any property required to be included in the gross estate of a decedent under the provisions of any such law, the amount of the tax so paid, *except in a case where a testator otherwise directs in his will,* shall be equitably prorated among the persons interested in the estate to whom such property is or may be transferred or to whom any benefit accrues." (Emphasis added).

The Chancellor found that the exception contained in T.C.A. sec. 30-1117, emphasized above, was invoked by the language in the will wherein the testator said:

"(c) My executors shall pay from my estate all Federal estate taxes and all state inheritance, estate or succession taxes, and any and all other taxes imposed upon my estate by any taxing authority by reason of my death, and my executors shall not charge to or collect from any devisee, legatee, or beneficiary any portion of such death taxes regardless of whether or not such beneficiary is named in this will or is designated such in any insurance policy or other contract or takes by reason of law. All such taxes shall be paid from and out of that portion of my residuary estate passing pursuant to *ITEM IV* of this will."

This Court considered a similar will provision in conjunction with T.C.A. sec. 30-1117 in *Commerce Union Bank v. Albert* (1957) 207 Tenn. 631, 301 S.W.2d 352. In that case, Mrs. Albert dissented from the will of her husband. The issue before the Court was whether or not the widow, after dissenting from the will, could benefit from provisions in the will exonerating her of payment of inheritance and estate taxes. In answering that issue in the affirmative, this Court stated:

"The statute to which we have referred, and quoted in part in this opinion, Section 30-1117, T.C.A., contains no provision to the contrary. The italicized language in the statute emphasizes that a testator may direct payment of these taxes as he may see fit. The executors are not privileged to ignore the will even though some *indirect benefits may accrue to persons not claiming title to property pursuant to its provisions.*

In Pritchard on Wills and Estates (Phillips' Revision), Section 399, it is said:

'The construction of a will is not to be varied by events happening subsequent to its execution; e. g., the dissent of the widow from the will of her husband, though it may defeat some of the arrangements made in the will, does not affect its construction.'

The foregoing text finds ample support in *Cochran v. Garth,* 163 Tenn. 59, 40 S.W.2d 1023, 76 A.L.R. 1413, and other cases cited in the footnotes.''

The defendants attempt to distinguish the present case from *Commerce Union Bank v. Albert,* supra, on the grounds (1) that Mr. Albert was married to his widow when he executed his will; (2) that the language there used specifically mentioned his ''wife''; and (3) that Mr. Albert could and probably did contemplate the possibility of a then existing wife dissenting from his will.

The Chancellor gave this argument much consideration and correctly answered it in his memorandum opinion, wherein, he said:

''Defendant challenges the interpretation of the will in question in the light of the circumstance that the execution of this will followed by one month the divorce and property agreement of the decedent and his former wife and that it predated his marriage to the complainant by some six months and that therefore any expressions in the will were not put there with the complainant in mind and consequently she cannot benefit from them. This construction presupposes that the decedent did not contemplate another marriage. After the divorce he was free under our law, to marry again and it is not for the Court to say what was on his

mind. The fact that he forbid his executors from collecting any 'such death tax' from any devisee, legatee or beneficiary 'regardless of whether or not such beneficiary is named in this will or * * * other contract or *takes by reason of law*' clearly shows that he had other people in mind than his divorced wife and his two daughters. This clause was purposely placed in the will to take care of any one entitled to an interest in his estate who was not named in the will, insurance policy or contract. Such a person is the complainant for she was not mentioned in any of these but did take 'by reason of law.' ''

We fully agree with the conclusion reached by the Chancellor and overrule this assignment of error.

The defendants' second assignment of error is that the Chancellor erred in holding that the estate should pay the fee of complainant's solicitor. The pivotal issue in this regard is whether or not the estate itself was benefitted by acts of the complainant's attorney, or whether the benefit inured primarily to the complainant. The Chancellor held that the estate should bear that fee because the complainant's solicitor performed a function of the Executor, who, when confronted with these questions, did not see fit to timely initiate the action.

■ It is correct to say that questions posed in this cause would require resolution before the estate could be settled. There is no stipulation or finding of fact, however, that the Executor refused to institute this action. The argument seems to assume that his failure to do so, within less than three months after the date of probate, equated a refusal. This Court cannot accept that assumption. Certainly, the Executor had an obligation to seek judicial assistance, if necessary, and there is nothing to

indicate that he would not have done so, given a reasonable time. It simply cannot be doubted that had the Executor instituted the suit, the complainant's attorney would not have been compensated by the estate for presenting and arguing the same points, on behalf of his client, that are presented in this case.

The complainant further urges that her action in successfully prosecuting this suit would lessen the Federal estate tax impact upon the estate; and thus increase the amounts to the named beneficiaries. Even if it is true that the result of this suit is an increase of the corpus to be allocated to the beneficiaries of the estate, by diminution of the net taxable estate, it does not follow, in the light of what has been said above, that the complainant's solicitor raised such issue for the purpose of advantage to the estate. Any such result was purely coincidental to the aggrandizement of his client's interests. We do not perceive one iota of justification for the view that complainant's counsel's efforts were directed to the advantage of the estate, as such, or that of the testamentary beneficiaries thereof.

The assignment of error in this regard is sustained and the judgment of the Court below awarding fees of counsel for complainant out of the general estate is reversed.

It results that the decision of the lower court is affirmed in part and reversed in part. The cause is remanded to the Chancery Court of Bradley County for completion of the administration of the estate in accordance with this opinion. The costs of this appeal are assessed one-half to the complainant and one-half to the Estate of Thomas

J. Marler, Deceased. Costs of the court below will abide final decree of that court.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and HUMPHREYS, JUSTICES, concur.