CLIFFORD D. PIERCE, JR., Administrator Cum
Testamento Annexo

*v.*

RUTH LIDDELL THARP et al.

455 S.W.2d 145, 457 S.W.2d 529, 461 S.W.2d 950

(*Jackson,* April Term, 1970.)

Opinion filed May 18, 1970.

Opinion on Petition to Rehear filed August 17, 1970.

Opinion on Second Petition to Rehear filed December 7, 1970.

Joseph W. Evans, Memphis, for Talmage E. Mugrage, C. M. Murphy, Memphis, for Mrs. Frankie Tharp Mc-Kown.

RAY A. BRATCHER and CLIFFORD D. PIERCE, JR., Memphis, for complainant below.

JOHN M. HEISKELL and JAMES S. GILLILAND, Memphis, for Ruth Liddell Tharp.

PHIL M. CANALE, JR., District Attorney General, and EUGENE C. GAERIG, Assistant District Attorney General, for State of Tennessee.

Mr. Special Justice W. J. Smith delivered the opinion of the Court.

The one and only question to be determined in this case is whether the Solicitors for Talmage E. Mugrage and Mrs. Frankie Tharp McKown are entitled to their reasonable attorneys' fees and expenses in representing their respective clients in the litigation involving the construction of the last will and testament of James H. Tharp, deceased, in the Chancery Court at Memphis and in the Court of Appeals and the Supreme Court upon petition for certiorari from the Court of Appeals, to be charged against the corpus of the estate.

The Court of Appeals, 58 Tenn.App. 363, 430 S.W.2d 787, held that neither Talmage E. Mugrage nor Mrs. Frankie Tharp McKown had any interest in the estate of James H. Tharp, deceased.

Thereafter and upon the entry of the procedendo from the Court of Appeals in the Chancery Court of Shelby County, C. M. Murphy, Solicitor for Mrs. Frankie Tharp McKown, who was one of the defendants in the cause

filed a motion for a decree directing the administrator cum testamento annexo to pay his fee and expenses as a part of the cost of the cause. His motion was accompanied by an itemized expense account aggregating some $994.58. And, also by the affidavits of members of the Memphis Bar as to what would be a reasonable fee.

Joseph W. Evans, Solicitor for Talmage E. Mugrage filed his petition for solicitor's fee and expenses. His petition was accompanied by affidavits of members of the Memphis Bar suggesting a reasonable fee. The matters were presented to the Chancellor on September 20, 1968. The Chancellor entered a decree by which he denied said attorneys' compensation to be paid from the estate, to which action of the Court both of said attorneys excepted, and filed their petition in the Court of Appeals for writ of error. The Court of Appeals held that petitioners, C. M. Murphy and Joseph E. Evans had rendered valuable services in the cause and were entitled to compensation out of the funds in the hands of the Administrator cum testamento annexo. The decree of the Chancellor was, therefore, reversed and the cause remanded to the Chancery Court * * * for fixing of reasonable attorney's fees and expenses incurred in behalf of both petitioning attorneys for their services in the original cause brought by the Administrator C.T.A.

Petitions for certiorari were filed by both Clifford D. Pierce, Administrator C.T.A., and Mrs. Ruth L. Tharp, widow of decedent James H. Tharp, which were granted and the case has been argued at the Bar of this Court.

It is conceded that Mrs. Frankie Tharp McKown, an adopted sister of testator, and Talmage E. Mugrage, a natural brother, were necessary and proper parties to

the original suit; and who contended that the trust undertaken to be established by testator's will was unenforceable and void, and consequently that they or one of them was entitled to inherit the residuary estate of testator. They also claimed that Mrs. Ruth Liddell Tharp was not the widow of James H. Tharp, deceased, because he was never legally divorced from his former wife, and therefore she was not entitled to share in the estate of James H. Tharp, deceased, except as provided for in his will, and that if she is legally his widow, she cannot dissent from his will because of an antenuptial contract. (*Pierce v. Tharp,* 58 Tenn.App. 362, 430 S.W.2d 787).

However, the Court of Appeals on the petition of the attorneys for fees (opinion filed May 28, 1969), quoted from the finding of the Chancellor as follows:

"Both of you were extremely helpful, and the briefs that were submitted were well done, and you represented the interests solicited for in a most able manner. Your services were not only a benefit to your client, but indirectly were helpful in investigating the background in permitting all of the people to be afforded. I don't doubt that."

And further the Chancellor said:

"* * * I have no authority to take from the estate, compensation for the benefit of solicitors who represented private individuals whose efforts, if successful, would have destroyed the trust rather than enhanced or improved it."

The Court of Appeals held that the Chancellor misapplied the rule with reference to allowing attorney's fees and remanded the cause for the fixing by the Chancellor

or reasonable attorney's fees to the petitioning attorneys. Thereupon the Administrator cum testamento annexo, and the widow, Mrs. Ruth L. Tharp, filed petitions for certiorari and assigned errors on the action and decree of the Court of Appeals. The assignment of errors of both the Administrator C.T.A., and the widow, Mrs. Ruth L. Tharp are:

"The Court of Appeals erred in its ruling that solicitors for disappointed heirs whose interests were adverse to charitable trust established under will of decedent, and who sought to have trust ruled invalid, were entitled to fees and expenses in will construction."

Assignments by the widow, Mrs. Ruth L. Tharp:

"1. The Court of Appeals erred in charging the estate with fees and costs for petitioners on the reasoning that petitioners' services in the will construction case resulted in benefit to the estate, when petitioner's purpose and effort was the advancement of their clients' interest in defeating the trust provided in the will, and any benefit resulting from a resolution of this matter was only incidental.

2. If fees should be allowed, the Court of Appeals, nevertheless, erred in assessing them against 'the estate', and either should have made the charge against 'the accumulated income from the trust', as sought by both the original unamended petitions, or should have remanded the cause to the trial court for exercise of its discretion in determining the source as well as the amount of the fees based upon its knowledge of all the facts and circumstances."

It must be borne in mind that both Mrs. McKown and Talmage E. Mugrage contended throughout the litigation

that the trust created by testator's will was void and unenforceable; that she or he, as the case may be, was therefore entitled to inherit all of the residuary estate of James H. Tharp. Their position was antagonistic to the will which they sought to defeat insofar as the trust was concerned. Under such circumstances can it be said that the petitioners as counsel for Mrs. McKown and Mr. Mugrage rendered services beneficial to testator's estate? *Pierce v. Tharp,* supra.

■ The general rule is stated in *Davis v. Mitchell,* 27 Tenn.App. 182, 247, 178 S.W.2d 889, 915, thusly:

"Fees for the services of an attorney not employed by the personal representative are sometimes allowed out of the assets but only where the services have inured to the benefit of the estate. The estate here is a trust for a specific purpose. In view of the conclusion we have reached as to the construction of the will, the services rendered by the plaintiffs in error must be regarded as designed and calculated to bring about a breach of the trust, not preserve it. There is, we think, no rational basis for charging the estate with the payment for services of that kind. While the situation was somewhat different in the case of *Tramell v. Tramell,* supra, the rationale of the conclusion denying a similar claim is against the allowance in this case." *Davis v. Mitchell,* supra, was cited with approval by Mr. Justice Tomlinson in *Nicholas v. Wright,* 204 Tenn. 533, 322 S.W.2d 223.

In *Tramell v. Tramell,* 162 Tenn. 1, 32 S.W.2d 1025, testator published his will in which he, among other provisions, created a trust. His son filed a bill to construe the will alleging (1) that testator be declared to have died

intestate as to all personal property; (2) that a trust created by certain items of the will be declared void as creating future estates in violation of the rule against perpetuities. The Chancellor denied, on application of complainant to charge the fees of his solicitor against the estate, and from this part of the decree complainant appealed. In passing on the question thus presented this Court said:

> "We concur with the chancellor that the cause is not one in which the complainant is entitled to have the fees of his counsel paid as a part of the expenses of the administration of the estate of the deceased. The suit was filed to maintain rights asserted in opposition to the will and not under it, necessitating the employment of counsel by the executors and trustees to defend the will and the trust estate created thereunder. * * *"

In *Vanderbilt University v. Mitchell,* 162 Tenn. 217, 36 S.W.2d 83, the trustee under the will of Thomas E. Mitchell filed his bill seeking a construction of the terms of the trust. The original bill was filed ex parte, and the Chancellor designated a member of the Bar *amicus curiae,* requesting brief and argument from him. Subsequently by amended and supplemental bill certain heirs and next of kin of testator were made parties. The final decree reciting that counsel for the trustee consented to the allowance of a fee to counsel for defendants, and the Court said:

> "* * * The services of all counsel have contributed to the preservation and proper execution of the trust. 'It is a doctrine of equity that a trust fund of right should bear the expenses of its own administration.' " (citing authorities)

■ But, unless the petitioning attorneys contributed some benefit to the preservation of the trust estate they are not entitled to a fee out of the trust fund. *Henshaw v. Flenniken,* 183 Tenn. 232, 191 S.W.2d 541; *Gilpin v. Burrage,* 188 Tenn. 80, 216 S.W.2d 732; *Draper v. Draper,* 24 Tenn.App. 548, 147 S.W.2d 759, notwithstanding the rule that a trust estate should bear the expense of the administration of the trust. *Moore v. Neely,* 212 Tenn. 496, 370 S.W.2d 537.

This Court in *Marler v. Claunch,* 221 Tenn. 693, 430 S.W.2d 542, held that counsel for the widow of decedent who filed a bill under the declaratory statute within less than three months after the date of probate was not entitled to a fee for his services to be paid out of the assets of the estate. In so holding Mr. Justice Creson, speaking for the Court, had this to say:

"* * * We do not perceive one iota of justification for the view that complainant's counsel's efforts were directed to the advantage of the estate, as such, or that of the testamentary beneficiaries thereof."

■ The test by which the question involved herein is to be determined is whether the services rendered by the attorneys for Mrs. McKown and Mr. Mugrage inured to the benefit of the entire estate as distinguished from services rendered to individuals claiming an interest in the estate. *Third National Bank v. Cohn,* 194 Tenn. 637, 254 S.W.2d 741.

■ The position of Mrs. McKown and Mr. Mugrage was (1) that the trust created by the will of James H. Tharp was void and unenforceable; (2) that she or he, as the case may be, was entitled to inherit all of the residuary estate of testator, each was cast in her or his position

in the suit. *Pierce v. Tharp,* 58 Tenn.App. 362, 430 S.W.2d 787.

With utmost deference to counsel for Mrs. McKown and Mr. Mugrage, we must hold that their fees and expenses cannot be paid from the assets of the estate of James H. Tharp, deceased.

It follows that the decree of the Court of Appeals will be reversed and that of the Chancellor affirmed.

The cost of the appeal is taxed against Mr. C. M. Murphy and Joseph W. Evans.

DYER, CHIEF JUSTICE, CRESON, and McCANLESS, JUSTICES, and JENKINS, SPECIAL JUSTICE, concur.

### OPINION ON PETITION TO REHEAR

MR. SPECIAL JUSTICE W. J. SMITH.

■ Honorable C. M. Murphy, who is joined by Judge Joseph W. Evans, filed their petition for a rehearing in which they contend that there was a concurrent finding of fact by the Chancellor and Court of Appeals which was binding on this Court. To support their contention petitioners quote only parts of what was said by the two lower courts and cite a number of the same cases referred to in briefs on the original hearing, and in addition cite a number of cases from other jurisdictions to sustain their contention, evidently overlooking the fact that the Court of Appeals in its published opinion (58 Tenn.App. 362, 430 S.W.2d 787), held that "both Mrs. McKown and Talmadge E. Mugrage contended that the trust is void and unenforceable; but secondarily, each of them contends that she or he, as the case may be, is therefore entitled to inherit all of the residuary estate of James H.

Tharp." * * * The Court of Appeals further held that neither Mrs. McKown nor Talmage E. Mugrage has any interest in the estate of James H. Tharp, deceased. The decision of the Court in that case is the law of the case. *City of Bristol v. Bostwick,* 146 Tenn. 205, 240 S.W. 774.

In disposing of the application of Petitioner for the allowance of fees and expenses the Chancellor made this observation:

"The Court: I might state at the outset that I am convinced that Mr. Evans and Mr. Murphy have done a thorough, capable, splendid job. I feel I am in the position expressed in that Southern case, to the effect that I am not allowed to award a fee, and it's a rule of law and not an order of the Court. You all may take it from there Mr. Murphy."

After counsel and the Chancellor discussed quite a number of cases, the Court said:

"The Court: I am more concerned with what my right is under the law, and I mean with reference to services and you Mr. Murphy have performed.

"I have no hesitancy in saying that the efforts that went by both of you into this lawsuit meant a great deal to the orphanage's disposition of it. Both of you were extremely helpful, and the briefs that were submitted were well done, and you represented the interest solicited for in a most able manner. Your services were not only a benefit to your client, but indirectly were helpful in investigating the background in permitting all of the people to be afforded. I don't doubt that."

And again, the Chancellor said:

"I can echo the expression made by the solicitor for the administrator. It's no pleasant task for me to deny fees, particularly in this case to the two attorneys who I know have devoted considerable time and energy and whose efforts in the case were most credible. But I just feel I have not the authority in the face of the objection by the administrator and even absent that objection.

"In the light of the cases that I have mentioned, I feel that Vanderbilt against Mitchell is clearly distinguished in the Gilpin against Burrage case, and I think in the Eppinger case Judge Swepston has reiterated the position that I have no authority to take from the estate, compensation for the benefit of solicitors who represented private individuals whose efforts, if successful, would have destroyed the trust rather than enhanced or improved it.

"Now, I don't enjoy this job, but that is my conclusion. I know not how to escape it. Therefore, the application of the solicitors for Mr. Mugrage and for the sister is denied." * * *

The Court of Appeals in its opinion stated:

"We are of the opinion the Chancellor misapplied the rule as heretofore stated. A review of the cases established the controlling point is not whether the party was in a position for the will or against the will; the controlling point is whether the services rendered inured to the benefit of the entire estate. In this case the estate could not be administered, apparently a trustee could not be appointed, the widow was at a loss as to her position, and the administrator C.T.A. required construction of the will and other instruments. The purpose of the suit was for the benefit of the entire estate

in that same was necessary before anyone could act with any degree of certainty. The result of the suit was that the rights and interest of all parties were settled. The suit settled and determined legal questions which have confronted any trustee who attempted to administer the trust. The suit also settled many legal questions which faced the administrator C.T.A.

"Under this situation we conclude that the services rendered by attorneys representing defendants to the bill brought by the administrator C.T.A. were of value to the entire estate. They represented one side of an issue which had to be determined before the estate could be administered."

■ The quotations of the Chancellor by petitioners are taken out of their context. If the whole remarks of the Chancellor are taken into consideration there is really no concurrent finding of fact by the Court of Appeals and the Chancellor. But, be that as it may, it is the duty of this Court to apply the law to the facts as they appear in the record.

The Court of Appeals held "the Chancellor misapplied the rule heretofore stated", (referring to cases cited in its opinion). A question of law is thus presented, that is, whether the Chancellor or the Court of Appeals "misapplied the rule."

■ We, in our research made independently of the cases cited in petitioner's brief, have been unable to find any decision of this Court holding that where parties, who had no interest in the estate or trust, and sought to destroy the trust, were entitled to have fees for such services paid from the estate or trust funds.

The petition to rehear is denied. The costs are adjudged against petitioners.

DYER, CHIEF JUSTICE, CRESON, and McCANLESS, JUSTICES, and JENKINS, SPECIAL JUSTICE, concur.

### OPINION ON SECOND PETITION TO REHEAR

MR. SPECIAL JUSTICE W. J. SMITH.

Mrs. Frankie T. McKown and her solicitor C. M. Murphy, filed their motion herein on September 4, 1970, in which they move the Court to (1) set aside and vacate the original decree of the Chancellor; (2) to vacate the decree of the Chancellor refusing to award solicitor's fees and expenses; (3) to vacate the decree of the Court of Appeals upon its published opinion, 58 Tenn.App. 362, 430 S.W.2d 787; (4) to vacate the order of the Supreme Court refusing to grant certiorari to review said published opinion of the Court of Appeals; (5) to vacate the order of the Supreme Court granting certiorari to review the decree of the Court of Appeals awarding solicitor's fees and expenses; and (6) to vacate the decree of the Supreme Court reversing the Court of Appeals decree, and for cause of said motion show; (in substance)

That the controversy arose out of a will which was prepared for decedent, Tharp, by the late Judge Preston Battle, at a time before he was appointed a criminal judge of Shelby County. That when the case was tried before Chancellor Charles Rond, Judge Battle was a criminal judge. Prior to the trial Mrs. McKown requested Judge Battle to confer with her about testator's intent with reference to the residuary trust, but he refused to do so. At the hearing the administrator testified that Judge Battle did discuss the will with him. That after the case

was tried and taken under advisement by Chancellor Rond, Judge Battle and the Chancellor conversed with each other and talked about the will and residuary trust out of the presence of and without the knowledge of these movents, and that the original opinion and decree of the Chancellor was based upon some of the argument and opinions advanced by Judge Battle. That, therefore, the constitutional rights of movents have been violated in that the Chancellor heard evidence and arguments which movents were not afforded an opportunity to challenge under Article 1, sections 8, 17, of the Constitution of Tennessee, and the Fourteenth Amendment to the United States Constitution.

That after the case was heard by the Court of Appeals (Western Section) and taken under advisement, movents are informed and verily believe that during the five month period the Court had the case under advisement, Judge Bejach and Chancellor Rond did talk and converse with each other about the facts and law of the cases; that Chancellor Rond thereby became an advocate before the Court of Appeals as to the merits of his opinion and decree; and movents were not afforded an opportunity to challenge or meet such facts and legal applications, and their constitutional rights were again violated.

That thereafter movents petitioned the Supreme Court for certiorari to review the decision of the Court of Appeals, "Again, the matter rested for some time in the bosom of the Supreme Court, at a time when Judge Creson and Judge Burnett were members thereof." "* * * That during the time before certiorari was denied, Judge Burnett and Judge Creson talked about the facts and the law of the case with Chancellor Rond and with Judge Bejach, and thereupon, Chancellor Rond and Judge

Bejach became advocates in support of the position they had already taken; and that such conversations and discussions influenced the Supreme Court to deny certiorari. All these conversations and arguments were done without the knowledge, information or consent of these movents, and operated to deprive them of their constitutional rights. * * *''

Movents further charge * * * that Judge Creson has known about and has discussed with Chancellor Rond the decision about the solicitor's fees at a time or times after the original Chancery Court decision, and before the Supreme Court decree reversing the Court of Appeals. * * * These discussions violated the said constitutional rights of these movents. * * *''

''* * * For the reasons above set out, the Court was subject to influence from facts and opinions not in the record, of which these movents had no knowledge, nor opportunity to meet, rebut or argue against, and were deprived of their right to due process under the state and federal constitution.''

''Wherefore, movants pray:

''1. That they be given an opportunity to adduce proof in support of this motion.

''2. That a hearing be set before this Court upon the issues raised herein, at such time thereafter as the orderly business of the court shall obtain.

''3. That all members of the Court who have participated in any decision in this case recuse themselves from acting upon this motion.

''4. That all parties to this suit be required to remain in status quo, and be enjoined not to dispose of or to com-

mit any waste as to any property, real or personal, involved in this suit.

"5. To be allowed to present other reasons in support of this motion, if the proof so indicates.

"6. And they pray for general relief."

On October 2, 1970, Judge Joseph W. Evans filed on behalf of himself and Talmage E. Mugrage a motion "to strike their names from the motion heretofore filed by C. M. Murphy, Solicitor, and would show the Court the following facts, to wit:

"That I discussed with C. M. Murphy filing a motion to retax the cost in the above styled cause; that no other allegations in said motion were discussed; that I did not examine said motion before it was filed.

"Wherefore, movent prays:

"That the name of Joseph W. Evans and Talmage E. Mugrage be stricken from said motion and not be considered on his behalf or his client."

The motion of Judge Evans and Talmage E. Mugrage is sustained, and the names of Joseph W. Evans and his client, Talmage E. Mugrage will be stricken from the motion of C. M. Murphy, et al.

■ First, Mrs. McKown and Mr. Mugrage style their paper filed herein on September 4, as a motion, yet, and in fact it is a second petition to rehear filed without leave of the Court. Rule 32, 218 Tenn. 826.

"One can only determine the purpose of a suit from the pleadings." *Union Tanning Co. v. Lowe,* 148 Tenn.

407, 412, 255 S.W. 712, 713; *Nelson v. Rural Educational Ass'n*, 23 Tenn.App. 409, 134 S.W.2d 181.

■ The original decree of the chancery court was rendered by Chancellor Rond in 1966, from which an appeal was perfected to the Court of Appeals and determined by that court on December 15, 1967. Certiorari was denied by the Supreme Court, July 5, 1968. The opinion of the Court of Appeals appears in 58 Tenn.App. 362, 430 S.W.2d 787. These decrees are now final.

In *Hethcoat v. State*, 213 Tenn. 563, 566, 376 S.W.2d 478, 479, it is said:

" * * * This Court, as well as other courts of lower jurisdiction, lose control or jurisdiction over its final judgments when the term is ended or when there has been an expiration of thirty days. *State v. Dalton*, 109 Tenn. 544, 72 S.W.456. We consequently have no jurisdiction after final judgments have been rendered in these cases to remand them so that the trial judge might enter any other or different order.

"* * * One of the first reported cases on this question was *Anderson v. Thompson*, 75 Tenn. (7 Lea), 259, wherein this Court held that a court cannot even by consent set aside, at a subsequent term, its judgment of a former term, except for a clerical mistake or inadvertence; and this can only be done by authority of sec. 16-309 and sec. 16-310, T.C.A., which gives the court the opportunity to correct such error. Section 16-309, T.C.A., provides in effect that in all cases in which this Court gives a judgment or decree 'when upon the fact of the record no cause of action existed against the party, the court may, upon its own motion, vacate such judgment or decree.' The mere fact that

such a statute has been on the books for more than a hundred years implies within itself that this Court has no jurisdiction to vacate or set aside a judgment as here when it is not to correct a clerical error or mistake or things on the face of the record which bring into play sec. 16-310, T.C.A. It is true that the Anderson case is a civil case, but the same rule applies in a criminal case as shown by *State v. Dalton,* supra."

 The question of counsel fees and expenses were presented to Chancellor Rond, on September 20, 1968, and his decree was entered September 26, 1968. The opinion of the Court of Appeals was filed May 28, 1969. Certiorari was granted and the case set down for argument December 1, 1969. The case was presented to this Court on April 6, 1970. Petitioners had five months after certiorari was granted to prepare their case. The matters now brought forward in the petition (called a motion by movents) could have been investigated during the five months waiting period. But petitioners preferred to rest on their oars until the Court announced its decision, and then come forward with a belated effort to charge that some of the justices on the Court were disqualified to hear the case. If any member of the Court were disqualified to participate in the hearing, such incompetency was waived by failure of petitioners or movents to make objection in limine on the hearing and petitioners are conclusively presumed to have consented to his or their participation in the hearing. *Wroe v. Green,* 32 Tenn. 172 (2 Swan); *Crozier v. Goodwin,* 69 Tenn. 125; *Grundy County v. Tennessee Coal Iron & R. Co.,* 94 Tenn. 295, 325, 29 S.W. 116; *In re Cameron,* 126 Tenn. 614, 662, 151 S.W. 64; *Obion County for Use of Houser Creek Drainage Dist. v. Coulter,* 153 Tenn. 469, 480, 284 S.W. 372.

 As stated the first item of the prayer of the motion (petition) is "That they be given an opportunity to adduce proof in support of this motion." The second item of the prayer of the petition is "That a hearing be set before this Court upon the issues raised herein * * *". A rather unique and novel proposal since this Court is a court of appellate jurisdiction only. T.C.A. sec. 16-304; *Simm v. Dougherty,* 186 Tenn. 356, 210 S.W.2d 486; *Memphis St. Railroad Co. v. Byrne,* 119 Tenn. 278, 104 S.W. 460; *In re Bowers,* 137 Tenn. 193, 192 S.W. 919.

*In re Bowers,* supra, it is said:

"Section 2 of article 6 of the state Constitution provides that the jurisdiction of the Supreme Court 'shall be appellate only * * *.'

"This section of the Constitution has been construed in many cases, and the holdings of this court have been uniform to the effect that it is without original jurisdiction in any matter, and that it is beyond the power of the Legislature to confer original jurisdiction upon it. *King v. Hampton,* 3 Hayw. 59; *Miller v. Conlee,* 5 Sneed, 432; *State v. Bank [of East Tennessee],* 5 Sneed, [573] 577; *State [ex rel. Richards] v. Sneed,* 105 Tenn. 711, 58 S.W. 1070; [*Memphis St.*] *Railroad v. Byrne,* 119 Tenn. 278, 104 S.W. 460; *State ex rel v. Hebert,* 127 Tenn. [220] 240, 154 S.W. 957; *State v. Gannaway,* 16 Lea, 130."

 The petition (called a motion) "* * * charges as a fact that the two members (Mr. Chief Justice Burnett and Mr. Justice Creson) who refused the first certiorari had become convinced as to their conclusion of the issues, and upon facts and information and opinions not presented to this Court when the second application for

certiorari was granted, that they influenced the entire Court to their opinion.''

Before the case was presented to the Court Mr. Chief Justice Burnett had retired, so he was not on the Court. The sole and only action taken by Mr. Justice Creson was to concur in the opinion of the Court. Mr. Justice Creson made no statement before the case was determined as to how it should be decided.

"It is exceedingly easy for litigants and counsel to imagine that a judge is prejudiced against a party, or against his counsel, who has failed to successfully prosecute, or successfully defend, any one or more cases. It is an infirmity of human nature that counsel, whose feelings and personal interests are deeply enlisted in every important case they try, are frequently unable to attribute want of success to the inherent weakness of the case, or their own shortcomings in the management of it. It is a matter of general knowledge among lawyers that the refuge of defeated counsel is far too often abuse of the court, referred to pithily by lawyers as 'cussin' the court.' When the tide turns, and success crowns the efforts of previously disappointed counsel, his opinion of the intelligence, learning, and probity of the court experiences a high, upward tendancy." *In re Cameron,* 126 Tenn. 614, 650, 151 S.W. 64, 74.

In *Chumbley v. People's Bank & Trust Co.,* 165 Tenn. 655, 57 S.W.2d 787, this Court said:

"* * * The interest which disqualifies a Judge is a direct pecuniary or property interest, or one which involves some individual right in the subject matter of the litigation, whereby a liability or pecuniary gain

must occur on the event of suit. *Ex parte Alabama State Bar Association,* 92 Ala. 113, 8 So. 768, 12 L.R.A. [34] 136; 33 C.J. p. 992, sec. 135, p. 994, sec. 137.''

■ The court in *Winter v. Allen,* 166 Tenn. 281, 62 S.W.2d 51, had this to say:

''The rule is well settled in this state, certainly in civil cases, that a party may waive the imcompetency or lack of authority to act of the trial judge, and does so waive it by implication when no objection is made at the trial and in the trial court. As said by Judge Freeman in *Crozier v. Goodwin,* 1 Lea [125], 128, 'It would be monstrous to allow a party to acquiesce in the action of such a court without objection, and then, on appeal show the fact as ground for reversal.' See *Wroe v. Greer,* 2 Swan, 172; *Holmes v. Eason,* 8 Lea, 754; *Posey v. Eaton,* 9 Lea [500], 501.''

The same rule would apply in this Court.

Counsel state in their petition that:

''The constitutional rights of these movents have been violated thereby in that the chancery court has heard evidence and arguments which these movents were not afforded an opportunity to challenge or argue against. Art. 8 and 17, sec. 1, Constitution of Tennessee; 14 Amendment, United States Constitution.''

We presume he meant Article 1, sections 8 and 17. Counsel and his client have had the process of the chancery court, the Court of Appeals and the Supreme Court, all legally constituted.

The constitution prescribes that this Court shall be composed of five Judges: yet the same instrument pre-

scribes that the concurrence of three shall make a constitutional judgment. Article VI, sec. 2; *Radford Trust Co. v. East Tennessee Lumber Co.,* 92 Tenn. 126, 138, 21 S.W. 329. Neither Mr. Justice McCanless, who had only been on the Court three months when the petition for certiorari was granted December 1, 1969, nor Mr. Special Justice Jenkins nor the Special Justice who prepared the opinion for the Court, ever heard of the case until it was argued and presented to the Court on April 6, 1970, so these three justices could, and did, make a constitutional judgment in the case.

Every lawyer, worthy of respect, realizes that public confidence in our courts is the cornerstone of our governmental structure, and will refrain from unjustified attack on the character of the judges. *Kentucky State Bar Ass'n v. Lewis,* 282 S.W.2d 321, 326. And, it is the duty of the lawyer to maintain towards the Court a respectful attitude, not for the sake of the temporary incumbent of the judicial office, but for the maintenance of its supreme importance. Judges, not being wholly free to defend themselves, are peculiarly entitled to receive the support of the Bar against unjust criticism and clamor. Canons of Professional Ethics, American Bar Association, p. 116.

The second petition to rehear or motion, as it is called, is dismissed at the cost of petitioners. C. M. Murphy and Mrs. Frankie T. McKown.

DYER, CHIEF JUSTICE, McCANLESS, JUSTICE, and JENKINS SPECIAL JUSTICE, concur.

CRESON, JUSTICE, not participating.