In re the ESTATE OF HUGH A. GRIFFITH, Deceased, Jane Griffith Jay, Executrix, Appellant, v. HUGH A. GRIFFITH, III, et al., Appellees. —452 S.W.2d 895.

Middle Section. October 31, 1969.

Certiorari Denied by Supreme Court March 16, 1970.

Kelly & Cameron, South Pittsburg, Harris, Moon, Meacham & Franks, Chattanooga, for appellant.

Paul D. Kelly, Jr., Jasper, for appellees.

SHRIVER, P.J. (M.S.). This case involves a proceeding before the County Judge of Marion County on exceptions filed in behalf of beneficiaries named in the last will and testament of Hugh A. Griffith, deceased. These beneficiaries excepted to that portion of the final accounting and settlement of the Executrix whereby she seeks to be allowed credits for payments made to the Hamilton National Bank of Chattanooga, Tennessee, as agent acting for and in behalf of the Executrix and for payments to Ernst & Ernst and Charles N. Battle & Associates, two accounting firms that rendered services to the Executrix in the handling of the estate.

The will of Hugh A. Griffith, deceased, was probated on May 19, 1965, and his daughter, Mrs. Jane Griffith Jay, was appointed Executrix. Soon after her appointment, she employed Hamilton National Bank of Chattanooga as her agent with the understanding that the Bank would be paid the fee of the Executrix. Consequently, when said fee was fixed and allowed by the Clerk of the County Court, same was assigned to the Hamilton National Bank, which Bank was also appointed Trustee of the estate on September 25, 1965.

The compensation claimed by the Executrix which she assigned to the Bank as her agent amounted to $10,-610.61; and this fee and the assignment to the Bank were approved by the Clerk of the County Court of Marion County and exceptions were filed to the report of the Clerk, along with exceptions to the amounts paid the accounting firms of Ernst and Ernst and Charles N. Battle & Associates.

The exceptions were heard by the County Judge on oral evidence, and on May 23, 1969, the Court entered an order approving payments allowed by the Clerk to the two accounting firms but held that no more than a total of $12,000.00 should be allowed for administering the estate. Since accountants' fees of $4,700.00 and attorneys' fees of $4,000.00 were approved, only $3,300.00 as payment to the Executrix and to her agent, the Hamilton National Bank, for the handling of the estate was allowed under the decree of the County Judge.

From this action of the Court, the Executrix prayed and perfected an appeal to this Court under the provisions of 27-402, T.C.A.

Swafford & Kelly, attorneys for the appellees, made application to the Court for payment of reasonable attorneys' fees on a quantum meruit basis based on saving the estate the difference between the amount allowed by the Clerk and that allowed by the County Judge, and A. A. Kelly and W. D. Moon, Jr., attorneys for the executrix and the Hamilton National Bank, her agent, filed application for allowance of additional attorneys' fees to cover services which they were required to perform in connection with the disposal of the exceptions.

The Trial Court reserved action on both applications for attorneys' fees and left it for determination on appeal by this Court.

## ASSIGNMENTS OF ERROR

There are four assignments of error as follows:

1. The Court erred in sustaining the Exceptions in part because there is no competent, material and probative evidence to support the judgment.

2. The Court erred in sustaining the exceptions in part because the great weight and preponderance of the evidence is against the judgment.

3. The Court erred in considering and adopting for justiciable purposes the testimony of the two expert witnesses introduced by Exceptants because they wholly failed to qualify as such under the issue raised by the record and before the Court, and if so the hypothesis was erroneous.

4. The Court erred in allowing over objection of counsel a hypothetical question to be put to expert witness that did not fairly reflect the work done by executrix's agent when the sole issue before the court was what work had been done by said agent and the value thereof.

   This was error because the answer to that question was the only evidence submitted by appellees which tended to show the appellant should not receive the amount allowed by the Clerk.

## THE FACTS

As stated by counsel for the appellant, the will of the decedent was very involved and complicated in its pro-

visions. It consists of eleven legal-sized typewritten pages. It is divided into twelve items under Roman numerals, with numerous sub-items in Arabic numerals, with three separate Codicils consisting of several pages each, and it provides a marital trust for the life of decedent's widow, and a residuary testamentary trust by dividing the estate into two equal moieties and a third educational trust for decedent's granddaughter.

In addition to personal property, the will devises three items of real estate to the widow for life and a large farm to be operated by the Executrix in the first instance and later by the testamentary trustee during the life of the widow. And, while the real estate was not a part of the probate estate, for purposes of management of said farm, the Executrix during the administration, was onerated with the duties of management and accounting for rents received. Also, all items of real estate had to be included for taxation in the Federal estate and Tennessee inheritance tax returns.

The official inventory filed revealed that the probate estate consisted of money and bank accounts, numerous certificates of corporate stocks, a promissory note and a survivor interest in a partnership of which deceased was a member, and various items of miscellaneous personal property.

The Clerk took and stated a first and partial accounting and settlement of the executrix which was confirmed by the County Judge. A summary of the monetary value and monetary transactions held during the first accounting period is as follows:

"Value of corpus assets included in the official inventory $254,311.94
Principal cash received                                    $   2,731.80
Income cash received                                       $  12,048.45
Gain on conversions of corporate assets                   $   3,848.84
                                                          ─────────────
      Total                                               $272,941.03

(R.Vol. I, pp. 44)

---

Conversion of assets including the handling of twenty-four (24) items which were converted to cash in the total amount of $107,065.76. (R.Vol. I, Ps. 49-50)

During the first accounting period cash disbursements were made, covering sixty-two (62) items, including payments of bequests to beneficiaries under the will, as well as in payment of debts, claims, expenses and purchases of re-investments, and in the total sum of $94,344.86. (R.Vol. I, Ps. 50-52)

Title to an automobile was transferred to and delivery made to the widow. (R.Vol. I, P. 52)

The above first accounting period covered a period from date of Executrix' appointment on May 19, 1965 through September 30, 1966.

After notice given to all beneficiaries and parties at interest under decedent's will (R.Vol. I, Ps. 66-67), and on November 23, 1968 the Clerk took and stated the second and final accounting and settlement of the Executrix (R.Vol. I, Ps. 68-71), and covered a period of time since the date of the first accounting and settlement on September 30, 1966 to the said date of November 23, 1968."

A summary of the monetary transactions and handling of the estate, during the period of the final accounting and settlement, is as follows:

78

| | |
|---|---|
| "Assets on hand as of date of first and partial accounting | $204,399.92 |
| Fourteen conversions of assets into cash were made in the amount of $67,078.36, and for a total gain of | 9,600.00 |
| Income received during same period | 21,939.85 |
| Stock dividends were received and adjustments of inventory values made thereof to Federal Estate Tax returns in the amount of | 6,000.00 |
| Total | $241,939.77 |

(R.Vol. I, Ps. 71-73)

Cash disbursements were made in payment of debts, taxes, costs of administration, payments to beneficiaries, and in payment of capital assets purchased for investment, thirty-nine (39) items, in the total amount of $64,672.02 (R.Vol. I, Ps. 73-74)

Furniture and like assets were delivered in kind to the value of $1,353.00 (R.Vol. I, Ps. 73-74)

Assets in kind were distributed to the marital trust under decedent's will of the total value of $78,646.53.

Assets in kind were distributed to the testamentary trust under decedent's will in the amount of $69,982.82.

As a part of the cost of administration the Executrix paid Accountants Ernst & Ernst and/or Charles N. Battle & Associates, $4,500.00 (R.Vol. I, Ps. 51-52 & 73), and to Petty & Landis, Accountants, $200.00 (R.Vol. I, P. 74), and to Allan Kelly, Attorney for Executrix, $4,000.00 (R.Vol. I, P. 74).

The Executrix claimed compensation for her services, which she assigned to the Hamilton National Bank of Chattanooga, Tennessee, her agent, and paid the same in the amount of $10,610.61. (R.Vol. I, P. 64) The Clerk approved Executrix' compensation and payment thereof to her agent. (R.Vol. I, P. 69) "

Oral evidence was introduced on behalf of the Executrix and on behalf of the exceptants.

Jane Griffith Jay, the Executrix, testified that on appointment as such Executrix, she retained an attorney and began work on the early phases of the administration of the estate and then discovered that the handling of same was so complicated that she needed the help of a Bank and Trust Company experienced in such matters. She stated that she then employed Hamilton National Bank of Chattanooga as her agent to handle the details of all matters pertaining to the estate. At all times thereafter, she consulted with the officials of the trust department of this Bank with reference to the matters of the estate. She agreed with the Bank that, as a fee for its services as her agent, she would assign to them the amount allowed her as Executrix by the Court. She informed the other members of the family, the heirs and beneficiaries, of this contract with the Bank and they were well pleased and made no objections to her action in this regard. She estimated that during the three years of administration, she personally had been in conference and consultation with officials of the trust department of the Bank for a minimum of 100 hours. It was her opinion that the compensation allowed by the Clerk was entirely reasonable.

She stated that she employed Charles N. Battle, an accountant, to handle the tax matters of the estate, since he had done her father's accounting and tax work for years while she herself had been her father's bookkeeper during the time that Mr. Battle did this accounting and tax work. She was of opinion that the fee charged by Mr. Battle was entirely reasonable.

*Mr. Wallace Bristow,* Administrative Trust Officer of the Hamilton National Bank of Chattanooga, was called to testify. He stated that he had handled trust work since 1947 and took the Trust Department's file in the Griffith estate after the initial work had been done by another trust officer. He stated that the Trust Department of the Bank has about 30 employees; that at some time during the three-year period they handled this estate, all of them had come into some phase of the handling of same. He testified that numerous conferences had been held with accountants, lawyers, and members of decedent's family, which included the people who had excepted to the fee in this case. This witness referred to the thorough study and analysis made by the Bank of decedent's will and the details required due to medical treatment and hospitalization of the widow, which occasioned many trips from Chattanooga to South Pittsburg; the collection and evaluation of the various assets, especially the corporate stocks and considerable work in connection with evaluation and sale of decedent's interest in an insurance agency partnership. He referred to and discussed inheritance tax waivers which were procured from the Tennessee Department of Revenue to allow corporate stock transfers, federal estate tax, life insurance forms, preliminary federal estate tax returns which were prepared and filed; estate taxes paid and final receipts procured. He discussed the difficulty and long delays experienced in procuring proper transfers of corporate stocks and numerous conferences with the accountants and with Federal Revenue Agents.

This witness testified that the real estate owned by the decedent was identified, appraisals of value procured for tax return purposes and for determining proper alloca-

tions of the items under the will of decedent, and this included inspection by a trust officer of each item of realty. Data was compiled for use of the accountant in preparing income tax returns and assistance given in the complicated analysis attending that return. He exhibited correspondence in connection with the administration of the estate and testified that, since there had been hard feelings among the members of decedent's family and heirs, much difficulty in handling the estate resulted therefrom, although no complaints had previously been made about the compensation to be paid the Executrix. He expressed the opinion that the compensation was not only reasonable, but inadequate, due to the complexity and the time involved in the administration of this estate. He estimated the total work time done by the Bank on this estate to be about 500 hours.

*Mr. R. A. Alston* testified for the Executrix and the Bank. He is a Vice-President, Director and Trust Officer of Hamilton National Bank of Chattanooga. He is also a licensed attorney in Tennessee and Georgia, and has been actively engaged in trust administrations for twenty years or more.

This witness compared the compensation claimed by the Executrix and assigned to the Bank with two other Chattanooga banks having trust departments. He testified that the Pioneer Bank's rates for handling estates as executor or administrator are 5% of the first $25,000, 4% of the next $50,000, 3% of the next $275,000, 2% of the next $300,000, and 1% on all amounts above $300,000. These charges are based on the gross taxable estate and, under these rates, charges in handling this estate would have been $12,826.65, including income charge.

He testified that the American National Bank and Trust Company of Chattanooga charges 5% of the first $20,000, 4% of the next $80,000, 3% of the next $150,000, 2% on the next $500,000, and 1% thereover. He also stated that these three Banks are the only agencies engaged in the administration of estates in Hamilton County.

He then testified that the banks in the Nashville banking area have charges higher than those in the Chattanooga area. He stated that the Third National Bank of Nashville's rates are 5% of the first $20,000, 4% of the next $80,000, 3% of the next $200,000, 2% of the next $700,000, and 1% thereafter, plus income charges.

He testified that Citizens and Southern Bank in Atlanta charges 4% flat on the first $500,000, and 4% of all the income across the board, and 3% of the next $500,000, on that above the first $500,000, the charge is 3% flat.

He thus concluded that the charges of the Hamilton National Bank in this case are lower than those generally charged by the other banks in Chattanooga, Nashville and Atlanta.

He also called attention to the fact that the amount of compensation claimed by the Executrix was reported as a deductible item in the Federal Estate, as well as the Tennessee Inheritance Tax returns; and in each instance, the charges were approved by the taxing authorities.

He further called attention to the fact that the farm land of the estate was under administration of the Executrix or her agent during the time of the administration, but, thereafter, went into the testamentary trust under decedent's will. Based on his experience in trust work

for many years, he was of opinion that the compensation claimed was reasonable and in keeping with that allowed by the courts in Hamilton County.

Finally, he called attention to the fact that the Bank was in position where it completely protected the Executrix insofar as any liability was concerned; that they assumed all the risks of the administration, and he stated: "So the risk in this business is quite large. You have to be paid even more than for the physical work."

The evidence introduced on behalf of the appellees consisted of the testimony of two reputable lawyers, *Mr. Nat Brown,* of Jasper, Tennessee, and *Mr. William Ables,* of South Pittsburg, Tennessee. These two gentlemen were asked identical hypothetical questions for the purpose of eliciting their answers as to what would be a fair and reasonable charge for the services rendered in the handling of this estate, including that of attorneys, accountants, and agents of the executrix.

The form of the hypothetical question was objected to as not being sufficiently inclusive of the evidence introduced at the trial, but the objection was overruled.

*Mr. Brown's answer* was "I'd say $12,000.00, total for the whole thing—that's the attorneys, the accountant and executor." He was then asked if he was familiar with the Marion County Bar Association rates to which he replied in the affirmative. He then testified as to the recommended fee of the Bar Association for attorney's fees and stated:

"Now, calculating the value of the entire estate, both real estate and personal property and leaving the attorney's fee at maximum provided would come to $8800

in this county if most all others follow the practice of doing—the attorneys doing all the work required in connection with the administration of an estate including tax matters.

\* \* \* \* \* \*

Now, as far as an executor fee is concerned, as I understand the law correctly, it's whatever the court might in its discretion think would be fair and reasonable but not to exceed five per cent.''

It is argued by counsel for appellant that Mr. Brown disqualified himself as an expert witness as to matters such as those involved in the case at bar, but we will not go into a discussion of the questions and answers on which counsel for appellant rely in coming to this conclusion.

*Mr. William Ables* was asked the same hypothetical question as that propounded to Mr. Brown and his answer was, ''Well, I would say a maximum fee for all services involved would be $10,000.00.''

He was asked if he had read the will involved here and he stated that he had not. He was asked if he had looked at the inventory of the estate and he answered he had not. He was asked if he had examined the federal tax returns in this estate and he said he had not; and likewise had not examined the Tennessee Inheritance Tax return, nor had he examined the accounting filed in the estate. The witness was then questioned about the Bar schedule for the Marion County Bar.

On further cross-examination, he stated: ''The figure I quoted would be the high minimum.'' And he stated that he did not know how many hours were involved in han-

dling this estate. He was asked: "So how many hours do you suppose were contemplated in the hypothetical question put to you? A. I couldn't answer that question." At another point, he stated: "I don't know how many hours it should take or shouldn't take. I can't say that. I don't know how many hours it would take."

At another point, he testified as follows:

"Q. So without knowing what work the accountant did, without knowing what work the lawyer did, without knowing what work the executor did, it's a guess based on the schedule, isn't it?

A. It's not a guess. It's based on the schedule and based on the hypothetical setting out the values involved and the question involved.

Q. But it's based on a dollar amount and comparisons of percentages and is not based on the work done, is it, Bill?

A. It's based on the hypothetical given to me, the hypothetical set out of what was done.

Q. Yeah. But the hypothetical didn't tell you what work the bank had done, did it?

A. Well, if the tax returns were prepared and filed by —and that's what the hypothetical stated—by an accountant and the first and final accounting and the probating of the will were filed by the attorney, and that's what the hypothetical stated apparently, then the executors did nothing.

Q. That's all you thought the question was?

A. A nominal fee would be $10,000.

MR. MOON: That's all."

We are impressed that the testimony of these two attorneys based on the hypothetical question propounded to them and to which they responded by expressing an opinion, is in no wise conclusive evidence of the fees that should have been allowed the Executrix and the accountants and approved by the Court.

■ It is our opinion that the evidence definitely preponderates in favor of the charges allowed and confirmed by the Clerk of the County Court rather than those eventually allowed by the County Judge.

■ It is asserted by counsel for the appellees that the Trial Court will be sustained if there is material evidence in the record to support the decree. This is not the correct rule and is not supported by 27-303 T.C.A., nor by the decisions. On the contrary, the cause comes to us for a hearing de novo with the presumption of correctness of the judgment of the Trial Court.

■ Exceptions filed in probate proceedings are in the nature of chancery cases and are tried de novo by the court to which the appeal is made. It is stated in Phillips' Pritchard Law of Wills, Vol. 2, sec. 790, that upon exception to the Clerk's allowance to the representative, the County Court, or upon appeal from the action of the County Court, the Circuit or Chancery Court or Court of Appeals or Supreme Court, will revise the action of the Clerk when the allowance is made on a wrong principle or when the compensation allowed is clearly inadequate or excessive.

It is further stated in the same section by the author that the rate of compensation to the executors and ad-

ministrators is not fixed by statute in Tennessee, but the amount of every allowance rests in the sound discretion of the court in view of all circumstances, and an executor who also serves as trustee is entitled to compensation in both capacities, citing Leach v. Cowan, 125 Tenn. 182, 140 S.W. 1070, Ann.Cas. 1913C 188.

It results that assignment No. 2 is sustained, the judgment of the County Judge is reversed and the allowance made by the Clerk of the County Court is affirmed.

The cause is remanded to the Trial Court for such proceedings as are necessary and proper, and especially for the purpose of fixing reasonable fees for counsel for services in connection with the exceptions heard below and the appeal to this Court. On such remand, there being no proof before this Court with respect to the services and the proper fee to be allowed, the Trial Judge may hear such proof as counsel desire to produce and as the Court deems necessary and proper to hear.

The costs of the cause will be paid by the Executrix out of the assets of the estate.

Reversed and remanded.

Puryear and Todd, JJ., concur.