Catherine B. McFARLIN, Limited Guardian for Ben Hall McFarlin, Sr., Plaintiff/Appellant,

v.

Ben Hall McFARLIN, Jr., Individually, and as Executor of the Estate of Martha Lowe Hall McFarlin, et al., Defendant/Appellee.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Dec. 8, 1989.

Application for Permission to Appeal Denied by Supreme Court March 5, 1990.

David Bate Parsons, Baker, Campbell & Parsons, Nashville, for plaintiff/appellant.

W. Kennerly Burger, Burger, Fly & McFarlin, Murfreesboro, for defendant/appellee.

## OPINION

KOCH, Judge.

This appeal involves a dispute between a father and his son over the son's administration of his grandmother's estate. The father's wife, acting as his guardian, filed an action against the son in the Chancery Court of Rutherford County, seeking an accounting and the removal of his son as executor. Following a bench trial, the trial court dismissed the father's complaint and directed that the son's executor fees and legal expenses be paid from the estate. The father has appealed, asserting that the evidence does not support the trial court's conclusion that the son was administering his grandmother's estate competently and in good faith. We agree and, therefore, reverse the trial court.

### I.

Ben Hall McFarlin, Sr. is a former county judge and a member of a prominent Rutherford County family. His first wife died in 1968, leaving him behind with three daughters and a son, Ben Hall McFarlin, Jr. Three years later, after his children had become adults, Judge McFarlin married Catherine McFarlin who, at the age of 36, was sixteen years his junior. Judge and Catherine McFarlin later had two sons of their own.

The other members of the McFarlin family never fully accepted Judge McFarlin's second wife. Each of the children of his first marriage did not get along with her, believing her to be a troublemaker and a divisive force in the family. The problems between Catherine McFarlin and the rest of her husband's family were exacerbated by Judge McFarlin's illness and the squabble over his mother's estate that gave rise to this lawsuit.

In November, 1981, Judge McFarlin suffered a series of debilitating strokes that impaired his ability to communicate and left him wheelchair-bound. At first, Catherine McFarlin attempted to care for her husband at home, while attending school at the same time. However, the burden and expense of caring for Judge McFarlin soon became too great, and in May, 1986, Judge McFarlin was admitted to the Veterans Administration Medical Center in Murfreesboro where he remains.

Judge McFarlin's mother, Martha Lowe Hall McFarlin, died on May 21, 1983, leaving a net estate worth more than $250,000. She was survived by a sister, Mary Hall; two children, Judge McFarlin and Martha Julia McFarlin; and several grandchildren and great grandchildren. Her 1967 will

and a 1979 codicil made specific bequests of tangible personal property to all the family members. It devised life estates in some commercial property to Judge McFarlin and his sister and also left the residuary estate to them. The 1979 codicil also named her grandson, Ben Hall McFarlin, Jr., a Murfreesboro attorney, as the executor of the estate.

Judge McFarlin's condition prevented him from assisting in settling his mother's affairs after her death, and so Catherine McFarlin acted as his representative. Judge McFarlin was deeply in debt at the time of his mother's death, and his increasing medical expenses caused him and his wife to push for a speedy distribution of the estate.

Judge McFarlin and his wife became concerned about the manner in which his son was administering the estate. In January, 1984, after discovering that his son had induced his aunt and great aunt to file claims against the estate, Judge McFarlin sued his son, his sister, and his aunt in the Chancery Court for Rutherford County, seeking an accounting and to marshal the estate's assets. Later, in September, 1985, he sought to remove his son as executor of the estate and to partition his mother's commercial property.

Judge McFarlin's older children launched a two-pronged attack against Catherine McFarlin in 1986. In July, 1986, his son filed a motion in the trial court seeking the appointment of a conservator for his father. Believing that Catherine McFarlin was the "motivating force" behind Judge McFarlin's lawsuits, he requested the appointment of "an attorney from the local bar, or another disinterested party" to "control and direct the conduct of all pending litigation in his name." In August, 1986, Judge McFarlin's daughters filed an action in the Circuit Court for Rutherford County, seeking to have themselves appointed as their father's limited guardian.

The children's efforts to isolate Judge McFarlin from his wife failed. In October, 1986, the trial court denied the motion for the appointment of a conservator, and in December, 1986, the circuit court appointed Catherine McFarlin as her husband's limited guardian. In August, 1987, the trial court directed that Catherine McFarlin, in her role as Judge McFarlin's limited guardian, be substituted as plaintiff in this case.

The trial court heard the proof without a jury in August, 1988. On November 10, 1988, it filed its final decree, dismissing all of Judge McFarlin's claims on the basis that "[t]he proof establishes that the performance of the defendant [Ben Hall McFarlin, Jr.] as executor, although not perfect, has been competent, and that defendant has acted in utmost good faith towards the estate and towards the beneficiaries thereof." The trial court also approved Mr. McFarlin's accounting and authorized him to pay himself $2,000 for his services as executor and to pay his law firm $19,000 in legal fees for representing the estate. Catherine McFarlin filed post-trial motions seeking additional findings of fact and to alter or amend the judgment which were overruled.

The outcome of this appeal hinges on the correctness of the trial court's conclusion that Mr. McFarlin discharged his duties as executor of his grandmother's estate competently and in good faith. Understandably, the parties do not share the same opinion on this issue. On one hand, Catherine McFarlin, on behalf of her husband, asserts that the decision lacks evidentiary support. On the other, Mr. McFarlin asserts that we should presume that the trial court was correct because the evidence does not preponderate against the trial court's findings.

## II.

The legal standards against which Mr. McFarlin's performance as executor should be measured are well understood. He occupies a fiduciary position, *Mason v. Pearson*, 668 S.W.2d 656, 663 (Tenn.Ct.App. 1984), and must deal with the estate and each of its beneficiaries in the utmost good faith. *Baker v. Baker*, 24 Tenn.App. 220, 240, 142 S.W.2d 737, 750 (1940). Like any other fiduciary, he is required to exercise the same degree of diligence and caution that reasonably prudent business persons

would employ in the management of their own affairs. *In re Estate of Inman,* 588 S.W.2d 763, 767 (Tenn.Ct.App.1979); *In re Estate of Cuneo,* 63 Tenn.App. 507, 515, 475 S.W.2d 672, 676 (1971); 2 H. Phillips & J. Robinson, *Pritchard on Wills and Administration of Estates* § 715 (4th ed. 1984) (hereinafter *"Pritchard"*).

■ The law favors the prompt administration of estates. *Burris v. McConnell,* 187 Tenn. 489, 496, 216 S.W.2d 10, 12 (1949). Accordingly, an executor has a duty to marshal and collect the estate's assets within a reasonable time. *Campbell v. Miller,* 562 S.W.2d 827, 832 (Tenn.Ct. App.1977); *Price v. Price,* 37 Tenn.App. 690, 694–95, 269 S.W.2d 920, 922 (1954); *Pritchard* § 716. An executor must also discharge its statutory obligations in a timely manner. *See Williams v. Thornton,* 160 Tenn. 229, 234, 22 S.W.2d 1041, 1042 (1930); *Love v. First Nat'l Bank,* 646 S.W.2d 163, 166 (Tenn.Ct.App.1982); *State ex rel. Burrow v. Cothron,* 21 Tenn.App. 519, 529–30, 113 S.W.2d 81, 87 (1937). Finally, an executor must distribute the estate in a timely manner and close its administration as quickly as possible. *Pritchard* § 718.

### III.

Serving as the executor of a relative's estate can become difficult when the executor's duty to the estate conflicts with other family loyalties. It becomes more difficult when, as in this case, the relative's death aggravates, rather than heals, existing family divisions.

■ An executor's performance should be judged in light of the circumstances existing at the time. *Young v. Phillips,* 170 Tenn. 169, 174–75, 93 S.W.2d 634, 636 (1936). We are mindful of the unfortunate dissension in the McFarlin family existing both before and after Mrs. McFarlin's death. However, rather than diminishing her executor's responsibilities, it only served to increase the importance of his duty of undivided loyalty to the estate and impartial and just treatment to each of the beneficiaries.

In light of all the circumstances, we have determined that Mr. McFarlin's administration of his grandmother's estate does not pass muster in three broad areas. First, he compromised his role as executor with regard to family members' claims against the estate. Second, he was careless and inattentive to the filings required by the probate and tax laws. Third, he deferred unduly to the wishes of his aunt and permitted her to play too great a role in the disposal of parts of the estate.

### A.

### The Relatives' Claims Against the Estate

■ Mrs. McFarlin lived alone after her husband died in 1976. She was 92–years-old on December 26, 1982, when she suffered a heart attack or a stroke that left her bed-ridden and helpless. Mary Hall, her elderly sister, and Martha Julia McFarlin, her daughter, moved into her home and cared for her until she died five months later.

The two ladies had no intention of charging Mrs. McFarlin or her estate for the care they provided during the last months of Mrs. McFarlin's life. However, as the deadline for filing claims against the estate approached, Mr. McFarlin and other family members convinced each of them to file $10,000 claims against the estate on the grounds that their care prevented placing Mrs. McFarlin in a nursing home. Even though he was the executor of the estate, Mr. McFarlin prepared and filed the claims for his aunt and his great aunt.

The ladies retained another lawyer after the claims were filed. Mr. McFarlin did not actively oppose the claims. While he filed a pro forma exception, he informed the trial court that, as the estate's executor, he did "not dispute the fact that services were rendered" and that "a Judge should decide whether or not any claim is due and if so in what amount."

In the face of his son's indifference, Judge McFarlin filed suit to challenge the claims and to force his son to marshal and account for the estate's assets. At the hearing on the validity of the claims, Mr.

McFarlin continued to assert that he "did not take a position one way or the other as to whether [the claims] should or should not be paid." The trial court subsequently agreed with Judge McFarlin and disallowed the claims.

Mr. McFarlin characterizes his conduct as simply an effort to help his relatives file their claims on time. However, his aunt and great aunt did not need his assistance. They were already receiving advice and assistance from their nieces' husbands who were also attorneys.

Mr. McFarlin also attempts to excuse his role in the preparation of the claims by pointing out that he excepted to the claims after they were filed. However, his exceptions were perfunctory at best, especially in light of their questionable validity. By precipitating the claims and then not opposing them, Mr. McFarlin breached his fiduciary duty to the recipients of the residuary estate who stood to receive less if the claims were allowed. He owed more to the estate than simply leaving the issue for the court to decide.

### B.

### The Timeliness and Accuracy of the Filings

■ State and federal law require executors to prepare and file various returns and reports regarding the estates they administer. Far from being mere technicalities, these filings are part of the executor's responsibilities because they form the basis for collecting estate taxes and because they provide the means by which executors are held accountable. Surprisingly, during the six years Mr. McFarlin administered his grandmother's estate, every filing he made was either late, incomplete, or erroneous. Viewed together, they support the conclusion that Mr. McFarlin filed documents only when the pressure of this litigation required him to.

Executors are required to file an accounting within fifteen months after they become qualified to administer an estate, and thereafter, they are required to file annual accountings. *See* Tenn.Code Ann. § 30–2–601(a) (Supp.1989). Mr. McFarlin qualified as executor on June 27, 1983, but did not file his first accounting until July 12, 1985. The only other accounting he filed was on July 29, 1988. Thus, his first accounting was nine months late, and he neglected to file accountings for most of the subsequent years.

Mr. McFarlin attempts to minimize the seriousness of his oversight by arguing that he was providing the same information informally to his father and would have provided any other information requested. However, the accounting requirement exists not only for the beneficiaries' benefit but also for the benefit of the estate's creditors, the taxing authorities, and the courts. They are intended to ensure the correct administration and speedy settlement of estates and to remove the temptation and opportunity for fraud and embezzlement. *See Pritchard* § 836.

Mr. McFarlin was likewise delinquent in filing the state and federal tax returns. Every tax return he filed was months, if not years, late. The state inheritance tax return was filed almost thirty months after Mrs. McFarlin's death, even though Tenn. Code Ann. § 67–8–409 (1989) provided that the tax was due within nine months from the decedent's death. The 1982 and 1983 federal fiduciary income tax returns were not filed until November, 1985, and the 1985, 1986, and 1987 returns were not filed until August, 1988, even though I.R.C. § 6012(b)(1) (1982) requires that they be filed by the April 15th following the end of the fiscal year for which the tax is due.

■ Mr. McFarlin does not deny that he filed the estate's tax returns late. However, he rationalizes his inattentiveness by pointing to his lack of expertise in tax matters, his reliance on his accountant, and his desire to save the estate the costs of preparing the returns. He also points out that the interest the estate earned by paying its taxes late exceeded the penalties and interest the estate was charged.

State and federal law require that the taxes due on an estate should be paid in a timely manner, particularly when the funds are readily available. An executor may not

speculate with funds due the state or federal government, even if the executor's efforts are earning the estate a greater return than the penalty and interest accruing in favor of the taxing authorities. *Vredenburgh v. Jones*, 349 A.2d 22, 43 (Del.Ch. 1975).

Mr. McFarlin conceded that he could have paid the state and federal taxes when they became due but chose not to do so. As a consequence, the estate has already been assessed over $1,500 in penalties with even more expected. This Court will not accept as a viable defense that a violation of a statutory duty is excusable so long as it earns the estate more than the estate loses in penalties and interest.

Like the tax returns and the accountings, the inventories Mr. McFarlin filed were incomplete. The first inventory filed in September, 1983 valued the estate at only $8,414. It misstated the amount of an insurance policy's proceeds, and it failed to include two bank accounts containing in excess of $19,000.

In each of these instances, Mr. McFarlin did not act with the same diligence that reasonably prudent men would have used in the conduct of their own affairs. He cannot on one hand point to his experience and competence as an executor and at the same time plead his ignorance of tax matters. None of his actions were caused by his accountant. Accordingly, we find that Mr. McFarlin's conduct with regard to the payment of the estate's taxes was neither competent nor in good faith.

### C.

### Undue Deference to Martha Julia McFarlin

■ Mrs. McFarlin's will placed her children on an equal footing. They were entitled to share equally in the proceeds from the sale of her house; they were both given life estates in her commercial property; and they were entitled to equal portions of the residuary estate. Neither child was to play a role in the administration of the estate since Mrs. McFarlin had left this responsibility to her grandson.

Notwithstanding his grandmother's intentions, Mr. McFarlin allowed his aunt to play a prominent role in settling Mrs. McFarlin's affairs. He permitted her to preside over Mrs. McFarlin's house and its contents over Catherine McFarlin's objections. He acquiesced in her entering her mother's safe deposit box and did not question her taking possession of three of her mother's bank accounts containing over $20,000. ·This conduct shows not only Mr. McFarlin's failure to take control of Mrs. McFarlin's estate but also inappropriate deference to the wishes of one of the beneficiaries when these wishes were clearly contrary to those of the other beneficiary.

### IV.

■ We find that the evidence does not support the trial court's conclusion that Mr. McFarlin administered his grandmother's estate in a competent and evenhanded manner. On the contrary, the evidence requires his removal and the appointment of a substitute executor for Mrs. McFarlin's estate who shall be given full authority to take any appropriate action on the estate's behalf and to close the administration of the estate in a timely manner.

■ Likewise, we find that Mr. McFarlin's executor's fee should be disallowed because he has failed to administer the estate in a competent manner. *Williams v. Thornton*, 160 Tenn. 229, 234, 22 S.W.2d 1041, 1042 (1930); *Horton v. Cope*, 74 Tenn. (6 Lea) 155, 160 (1880); *State v. Hardison*, 26 Tenn.App. 80, 83–84, 167 S.W.2d 998, 1000 (1942). We also find that Mr. McFarlin should be surcharged for any penalties and interest the estate has been or will be required to pay because of his failure to file timely or complete state and federal tax returns. *See Love v. First Nat'l Bank*, 646 S.W.2d 163, 166 (Tenn.Ct. App.1982); *In re Inman's Estate*, 588 S.W.2d 763, 767 (Tenn.Ct.App.1979).

■ We also vacate the trial court's award of $19,000 in attorneys fees to Mr. McFarlin's law firm. Attorneys fees may be awarded from the estate for services inuring to the estate's benefit. *Leaver v.*

*McBride,* 506 S.W.2d 141, 145 (Tenn.1974); *Pierce v. Tharp,* 224 Tenn. 328, 338, 455 S.W.2d 145, 149, *reh'g denied* 224 Tenn. 328, 457 S.W.2d 529, *reh'g denied* 224 Tenn. 328, 461 S.W.2d 950 (1970), *cert. denied,* 402 U.S. 929, 91 S.Ct. 1527, 28 L.Ed.2d 863 (1971). Any legal expenses Mr. McFarlin incurred relating to his aunt's and great aunt's claims against the estate should be disallowed because his conduct was not in the estate's interests. Similarly, both parties' legal expenses arising from Mr. McFarlin's attempt to have a conservator appointed for his father or from Judge McFarlin's daughters' efforts to obtain the appointment of a limited guardian should be disallowed because they were not for the estate's benefit but rather were part of their ongoing family feud. On remand, the trial court may, in its discretion, make an award for Mr. McFarlin's legal expenses which directly benefited the estate and may also make an award to Judge McFarlin for the legal expenses he incurred in this action, including his expenses for this appeal.

We reverse the trial court's judgment and remand the case for further proceedings consistent with this opinion. We tax the costs of this appeal in equal proportions to Ben Hall McFarlin, Jr. and the estate of Martha Lowe Hall McFarlin and their sureties for which execution, if necessary, may issue.

TODD, P.J., and LEWIS, J., concur.