# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
December 10, 2012 Session

## IN RE ESTATE OF CHARLES THOMAS JAMES

**Appeal from the Probate Court for Sevier County**
**No. 11034627     Hon. Jeffrey D. Rader, Judge**

---

**No. E2012-01021-COA-R3-CV-FILED-FEBRUARY 14, 2013**

---

This appeal concerns the administration of an estate. Decedent died testate, leaving all of his non-marital property to his surviving spouse and appointing his daughter as executrix. Executrix and Beneficiary initially agreed that administration of the estate was unnecessary. After Beneficiary suffered an injury and was diagnosed with Alzheimer's Disease, Executrix attempted to parcel out the property to Beneficiary's intended heirs. Shortly thereafter, Beneficiary sought administration of the estate. The trial court admitted the estate and following lengthy hearings regarding which items belonged in the estate, directed Executrix to pay the expenses and close the estate. Beneficiary did not appeal. Over Beneficiary's objection, Executrix organized an auction of the items held in the estate to satisfy the expenses. Following the auction, Beneficiary filed a petition in which she alleged that Executrix breached her fiduciary duty to the estate by organizing an auction that resulted in waste and mismanagement of estate funds. The trial court denied the petition. Beneficiary appeals. We affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Affirmed;**
**Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., P.J. and D. MICHAEL SWINEY, J., joined.

James L. Gass and Matthew L. Fink, Sevierville, Tennessee, for the appellant, Patricia R. James.

Richard T. Wallace, Sevierville, Tennessee, for the appellee, Karen Sue Smith.

**OPINION**

**I. BACKGROUND**

Charles Thomas James ("Decedent") and Patricia R. James ("Beneficiary") were married for approximately 50 years prior to Decedent's death. One child, Karen Sue Smith ("Executrix"), was born of the marriage. Decedent and Beneficiary had other children as a result of prior relationships. In addition to Executrix, Decedent fathered Kathy Landowski, Elaine Frank, Amy James, and Mike James. Likewise, Beneficiary mothered Deborah Martens and Allen James. Decedent passed away on October 9, 2009.

Decedent's five-page will, provided, in pertinent part,

I.

I hereby direct that all of my just debts, including funeral expenses , and taxes be paid as soon as practical after my death. I direct that all of my federal estate and state inheritance taxes assessed and payable because of my death, all costs of administration, and other property expenses shall become a charge upon and be paid from the personalty of my estate, and in the event the personalty of my estate is insufficient to make such payments, I direct [Executrix to] sell or encumber such real estate as is necessary to make payment of same.

II.

All of the property which I may own at my death, real and personal, tangible and intangible, of whatsoever nature and wheresoever situated, including all property which I may acquire or become entitled to after the execution of this Will, including all lapsed legacies, I give, devise and bequeath to [Beneficiary], to be hers absolutely if she shall survive me.

In the event that Beneficiary predeceased him or died simultaneously with him, he specifically devised several items of property to various family members, including Executrix, and then specified that whatsoever remained of his estate should pass to Executrix.

Executrix and Beneficiary sought the advice of Lanning Wynn, the attorney that prepared Decedent's will, after Decedent died. Relying upon that advice, Executrix and Beneficiary decided to forego the administration of Decedent's estate. When Beneficiary

suffered an injury and was diagnosed with Alzheimer's Disease, Executrix attempted to parcel out Beneficiary's property pursuant to Beneficiary's will.

On March 16, 2011, Beneficiary filed a petition to admit Decedent's estate into probate court in an effort to stop Executrix's parceling out of her property. She also sought appointment as personal representative of the estate. She alleged that Executrix had unlawfully taken control of Decedent's assets and attempted to dispose of assets that were left to her in Decedent's will. She filed an inventory of the estate in which she estimated that the total value of the estate was worth more than 2 million dollars. Executrix denied wrongdoing and explained that she was merely advancing Beneficiary's personalty pursuant to Beneficiary's will because she did not wish to store the property. Executrix subsequently filed her own inventory of Decedent's estate in which she denoted title of ownership for each item of personal property and listed an appraisal value for several of the items.

In consideration of the foregoing, the trial court admitted the will and appointed Executrix as personal representative of the estate. The court noted, "Decedent owned property at his death which is subject to [c]ourt supervision and administration by this [c]ourt." The court tasked Executrix with submitting a full inventory of the items of personal property. Executrix and Beneficiary then filed competing inventories with the court.

Beneficiary took issue with Executrix's labeling of several items of personal property as Decedent's. She alleged that the property held by Executrix was previously owned by her and Decedent as tenants by the entirety and that she became the sole owner of the property upon Decedent's death. She asserted that Executrix omitted several items of valuable property[1] and that the appraisal values for the items that were listed were "ridiculously and consistently low." She also stated that she should not be held responsible for the appraisal costs and for Executrix's attorney fees and other costs that were accumulated as the result of Executrix's wrongful attempts to encumber the property. Executrix again denied wrongdoing and sought administrative costs and attorney fees from the estate.

The court entered an order, finding that there was "no reason why the assets of the estate cannot be turned over to [Beneficiary], subject to outstanding administrative expenses." The court further held

> that the most expeditious manner to resolve the issues in this cause is to allow [Executrix] to remain as Personal Representative pursuant to the directive that

---

[1] It was later determined that Executrix had omitted at least two valuable items, a pocket watch and gun collection, from the inventory because she believed Decedent had gifted them to her prior to his death. Executrix later returned the items, at the direction of the court.

-3-

she immediately file the Tennessee Inheritance Tax Return and Request for Release of Estate Recovery in anticipation that she will receive clearance to close the estate from the Tennessee Department of Revenue and the Bureau of TennCare before the May 26, 2011 hearing date so that the [c]ourt may enter an order requiring that the assets of the estate be turned over to [Beneficiary], subject to any administrative expenses approved by the [court].

Meanwhile, Beneficiary had filed an action in Chancery Court, alleging that Executrix had swindled her out of money and the residence that she previously shared with Decedent. She alleged that Executrix's actions were in violation of Tennessee Code Annotated section 71-6-120, the Tennessee Adult Protection Act ("TAPA"). Apparently, Beneficiary had signed a deed in which she transferred her real property to Executrix. Beneficiary asked the court to allow her to consolidate the estate case with the TAPA case in Chancery Court.[2] The court denied Beneficiary's motion to consolidate but gave Beneficiary permission to retrieve the items that belonged exclusively to her. The court noted that all remaining issues, including the "consideration and approval of the inventory and accounting provided to the [c]ourt by [Executor], distribution of the testamentary estate of [Decedent], consideration and approval of all administration expenses related to the estate and closing of the estate" would be heard on August 25, 2011.[3]

In an order entered on October 18, 2011 ("the October Order"), the trial court refused to condone Executrix's actions but found "no fraud, deceit, or ill intent based on the proof at trial." The court ordered Executrix to return several items to the estate and approved the requested attorney fees and administration expenses, except for the amount sought prior to Decedent's death. The court continued,

It cannot be questioned that [Beneficiary] chose to allow the estate to proceed without administration for a long period of time following the death of her husband. To now claim that the actions of [Executrix] were inappropriate, is a position the court finds to be without merit. The court orders that the administration of the estate should continue. This will include the payment of administration expenses and subsequent disposition to [Beneficiary] so as to allow this estate to be closed within [120] days from the date of this [] order.

---

[2]At that time, the court had referred several issues of the case to the special master. The court eventually reversed that ruling, holding that it was unnecessary because the parties had largely resolved the contested issues.

[3]The transcript of this hearing was not included in the record on appeal.

Beneficiary did not appeal this order. In fact, no action was taken until Executrix organized an auction to convert the personal property into cash.

On December 30, 2011, Beneficiary attempted to tender payment of the estate costs to the court. Three days later, Beneficiary filed a petition for a restraining order and temporary injunction to halt the sale of the personal property contained in the estate. She believed that an auction would not yield the true value of the items contained in the estate and asserted that she had already paid the necessary administrative expenses, thereby invalidating the need for an auction. By order entered on January 6, 2012 ("the January Order"), the court allowed the auction to proceed as scheduled, finding that Executrix had "the statutory duty and authority to sell and to convert to cash [Decedent's personal property] without the intervention of the [c]ourt." Beneficiary did not appeal this order, and the auction proceeded as schedule, yielding $50,588.71 in net profit to the estate. The final settlement reflected that Thomas Carr Auctions ("the Auction Company") had charged Executrix a 30 percent seller's fee on the gross proceeds and $32,820.65 in expenses. Approximately one month later, Executrix sought to close the estate.

Beneficiary objected and filed a petition in which she sought damages from Executrix. She alleged that Executrix did not have the authority to sell the items because ownership of the items passed to her upon Decedent's death pursuant to the doctrine of tenancy by the entirety. In the alternative, she asserted that Executrix breached her fiduciary duty to the estate by organizing an auction that was commercially unreasonable and ultimately resulted in a significant monetary loss to the estate. She asserted that the value she placed on the property far exceeded the monetary value yielded from the auction. In addition to her loss in emotional value, she asserted that Executrix harmed several machines and antiques when she transported them to the auction site, resulting in unnecessary fees and the diminution of monetary value for several items. She requested monetary compensation for the items that were sold that had been diminished in value. She alleged that Executrix was not entitled to any amount of fees or expenses because of her actions. She also alleged that Executrix unlawfully sought attorney fees that were accumulated throughout the TAPA case, not the estate case.

Prior to the hearing on Beneficiary's petition, the court denied a request to submit an offer of proof regarding Beneficiary's argument that Executrix did not have the authority to sell the personal property because she owned the property as a tenant by the entirety. The court stated that ownership of the items contained in the estate had been resolved prior to the August hearing. The court noted that in the August hearing, the only issue before the court related to whether additional items should be included in the estate. The court held that the October Order became final without any further objection from Beneficiary. The court continued that Beneficiary never sought to exclude items from the auction when she filed her

petition to enjoin the auction, lending further credence to the fact that the issue of ownership had already been resolved. The court allowed the petition to proceed on the issue of whether Executrix breached her fiduciary duty to the estate.

Dale Carr, a licensed auctioneer, testified that he had been in the auction business for approximately 20 years and that he partially owned the Auction Company that was hired to sell the estate property. He recalled that he entered into a contract with Executrix that provided for a commission of 30 percent of the gross proceeds in addition to a buyer's premium of 15 percent for online sales and 10 percent for a live auction. He stated that the fees and commissions varied based upon the amount of work required for the auctions and that these particular auctions required extensive preparation and monitoring. He explained that the Auction Company arranged two online auctions and one live auction for Executrix. He believed that the fees charged in this case were reasonable, considering all of the work involved. He also believed that the expenses he charged were fair and necessary for the work needed to complete the sale of the property. He admitted that Executrix did not attempt to negotiate a lower fee or to reduce the expenses.

Mr. Carr stated that Executrix was also tasked with funding the transportation costs for several items of heavy machinery. He admitted that generally, he preferred hosting the auction on the seller's property in order to avoid the need to transport heavy items but said that the property in this case was not conducive for hosting an auction of such great magnitude. He stated that the first online auction and the live auction met his sales expectations but that he was genuinely pleased with the second online auction because it yielded sales in excess of his projections. He conceded that several items included in the live auction were damaged but insisted that the items were already damaged when he received possession of them. He admitted that the items were not stored in a climate-controlled area at the auction site and that at least one item had to be moved out of the rain.

Relative to the transportation of the heavy machinery, Mr. Carr testified that he hired Charles Blalock and Sons ("CBS") to transport the items. He conceded that he had not worked with CBS on prior occasions, that he did not know if CBS had "special expertise" in moving the type of equipment that needed to be transported, and that he had not considered other companies in his hiring decision. He recalled that prior to his involvement, the machinery had been stored outside in the rain. He also stated that trees and shrubbery had grown through the machinery. He insisted that while he was present, CBS did not damage any of the machinery. He acknowledged that CBS damaged the driveway when they transported the machinery and that Executrix needed to re-grade and re-gravel the driveway at an additional cost to her.

Allen James, Beneficiary's son, testified that prior to the auction, he attempted to pay the estate expenses by a certified check but that his efforts were unsuccessful. He stated that he was in the business of buying and selling heavy industrial machinery. He related that Decedent's estate included heavy industrial machinery and claimed that he was familiar with the monetary value for the specific items that were sold at the auction. He claimed that the machinery had been damaged. He insisted that the damage to the machines occurred after they were inspected in May or June, prior to the auction. He attended the live auction and purchased some of the machinery. He purchased a radial drill at the auction for $950 but stated that if the drill had not been damaged, he would have paid "somewhere between" $5,000 and $10,000. He asserted that the machines would not have been damaged simply because they were stored outside in the elements. He explained that the paint would have peeled but that the mechanical condition of the machine would have remained intact.

Mr. James identified photographs that were taken in the process of transporting the heavy machinery and described the way in which the equipment should have been moved. He also identified various items included in the auction that were damaged. He asserted that the damage to these particular items significantly reduced the monetary value of each item. He claimed that a solid wood dining set sold for only $100 and that he purchased Decedent's grandfather clock for $400, a small antique cherry dresser for $120, and a cedar bureau for $150. He also asserted that several pieces of equipment that had worked while at Beneficiary's home no longer worked once at the auction site.

Deborah Martens, Beneficiary's daughter, testified that she attended the live auction and observed that several items were "damaged" and "just thrown all over the place." She then identified several pictures, depicting damage to a grandfather clock, a cherry dresser, a cedar wardrobe, and a gold-framed mirror. She stated that Executrix was attempting to assess a claim against the estate for $5,852 for damage to the driveway that occurred when CBS transported the heavy machinery from the property to the auction site.

Beneficiary testified that she objected to Executrix's claim for expenses and asserted that Executrix should pay for the expenses. She explained that Executrix should be responsible for the cost of repairs to the property because Executrix caused the damage. She also objected to Executrix's fee for managing the estate and the fees charged by the Auction Company. She stated that Executrix contracted with the Auction Company and should be responsible for any fees that occurred as a result of that contract.

Robert Brihn testified that he had worked for CBS for approximately 30 years as a crane operator. He related that he had to obtain a license and special qualifications to operate cranes. He stated that he was familiar with Decedent, who frequently bought equipment and hired him to offload newly purchased equipment at Decedent's property. He admitted that

Decedent also hired others to offload "very, very large piece[s]" of equipment. He was working for CBS the day that the equipment was removed from Decedent's property. He claimed that he performed to the best of his ability on the day of transport. He recalled that it was a rainy day and that there were trees growing through a couple of the machines. He estimated that the machines had been exposed to the elements for approximately ten years. He stated that he had to cut a pine tree down because it had grown through one of the machines. He believed that the equipment "was picked up and placed like it was supposed to be placed" and that he picked up the equipment in the manner that Decedent would have picked up the equipment. He related that he also traveled to the auction site to unload the heavy machinery that he had moved. He admitted that other employees could have damaged equipment while he was not present but surmised that he did not know how he and the other CBS employees could have done a better job in hauling the machinery to the auction site.

Frank James, Decedent's brother, testified that he worked for CBS. He conceded that he was not at the property when Decedent's heavy machinery was moved. He estimated that the machinery had been on the property for 10 or 15 years. He was present at the auction and inspected some of the furniture, which he believed was in the same condition as it was before it was moved to the auction site. He admitted that one of the clocks had been damaged but asserted that the clock could have easily been repaired.

Following the hearing, the court denied Beneficiary's petition by order entered on April 16, 2012 ("the April Order"). The court noted that it had finalized all outstanding issues concerning the ownership of property in the October Order and that Beneficiary did not seek additional relief following the entry of the October Order. The court stated that its decision in the October Order was based upon the extensive proof presented at the hearing in August. The court held that Executrix had not breached any of her fiduciary duties by organizing the sale with the Auction Company. The court acknowledged that the Auction Company's fee was expensive but found that no proof had been entered to show that the fees were not commensurate with the standard in the industry. The court further held that Beneficiary had failed to prove that any items had been damaged as a result of the auction and had failed to provide a basis in which to assess the damage, if any had been proven to exist. The court also overruled the petition to deny Executrix's attorney fees and expenses, found that there was no proof that the requested fees and expenses were unreasonable, and approved the requested fees and expenses, reserving the issue of any additional fees and expenses that might be sought as incidental to the hearing or to close the estate. The court ordered the closing of the estate to take place within 60 days. This appeal followed.

## II.  ISSUES

We consolidate and restate the issues raised on appeal as follows:

A.  Whether this court has jurisdiction to hear this appeal.

B.  Whether Beneficiary waived review of the court's classification of the contested property as estate property.

C.  Whether Executrix breached her fiduciary duty to the estate.

C.  Whether Executrix is entitled to attorney fees and costs on appeal.

## III.  STANDARD OF REVIEW

On appeal, the factual findings of the trial court are accorded a presumption of correctness and will not be overturned unless the evidence preponderates against them.  *See* Tenn. R. App. P. 13(d).  The trial court's conclusions of law are subject to a de novo review with no presumption of correctness.  *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).  Mixed questions of law and fact are reviewed de novo with no presumption of correctness; however, appellate courts have "great latitude to determine whether findings as to mixed questions of fact and law made by the trial court are sustained by probative evidence on appeal." *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995).

However, "[t]he extent to which an executor should be compensated rests in the sound discretion of the court and is to be determined in view of all of the circumstances of the case." *Wood v. Lowery*, 238 S.W.3d 747, 760 (Tenn. Ct. App. 2007) (citing *Estate of Griffith v. Griffith*, 452 S.W.2d 895, 902 (Tenn. Ct. App. 1969)).  "A trial court abuses its discretion only when it 'applie[s] an incorrect legal standard or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). If a discretionary decision is within a range of acceptable alternatives, we will not substitute our judgment for that of the trial court simply because we may have chosen a different alternative. *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999).

## IV. DISCUSSION

### A.

In order to address Beneficiary's arguments, we must first address the threshold issue of whether this court has subject matter jurisdiction to hear this appeal. Executrix asserts that this court does not have jurisdiction to hear this appeal because the April Order was not a final order, capable of vesting this court with jurisdiction. In the April Order, the trial court reserved the issue of approving any additional fees and expenses that were incidental to the hearing or that were necessary to close the estate. Specifically, the court stated,

> The claims of [Beneficiary], filed pursuant to her petition are hereby denied. The application by [Executrix] for supplemental attorney and executrix fees and expenses is hereby approved consistent with [the] court's findings herein. Any additional fees and expenses incident to this hearing and to close the estate are reserved. The court hereby orders the closing of the estate to take place within 60 days.

There was no application for permission to appeal pursuant to the interlocutory process described in Rules 9 or 10 of the Tennessee Rules of Appellate Procedure, and the order was not certified as final under Rule 54.02 of the Tennessee Rules of Civil Procedure. Rule 3(a) of the Tennessee Rules of Appellate Procedure provides that when multiple parties or multiple claims are involved in an action, any order that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties is not enforceable or appealable. *See generally City of Jackson v. Hersh*, No. W2008-02360-COA-R3-CV, 2009 WL 2601380, at *3 (Tenn. Ct. App. Aug. 25, 2009) (citing *Ikbariah v. Williams*, No. W2008-00126-COA-R3-CV, 2008 WL 4613952, at *1 (Tenn. Ct. App. Oct. 17, 2008)).

This court does not have subject matter jurisdiction to adjudicate an appeal if there is no final judgment. *Bayberry Assocs. v. Jones*, 783 S.W.2d 553, 559 (Tenn. 1990). Our courts have generally defined a "'final judgment'" as one that "'resolves all the issues in the case, leaving nothing else for the trial court to do.'" *King v. Spain*, No. M2006-02178-COA-R3-CV, 2007 WL 3202757, at *8 (Tenn. Ct. App. Oct. 31, 2007) (quoting *In re Estate of Henderson*, 121 S.W.3d 643, 645 (Tenn. 2003)). "This [c]ourt has concluded on several occasions that an order that fails to address an outstanding request for attorney's fees is not final." *Hersh*, 2009 WL 2601380, at *4 (citations omitted). Unlike the judgment's lack of finality in *Hersh* due to the existence of an outstanding request for attorney's fees, the trial court in this case had addressed all of the pending requests for fees and expenses but simply acknowledged that there might be a future request. Thus, the trial court had considered and ruled upon all outstanding claims before it at that time.

-10-

Despite questions concerning the finality of the April Order, we may suspend the final judgment requirement in our discretion upon finding "good cause" to do so, pursuant to Rule 2 of the Tennessee Rules of Appellate Procedure. *See Jones*, 783 S.W.2d at 559. In one such case, this court elected to suspend Rule 3(a) because "[t]he issues which have already been adjudicated by the Chancery Court are unlikely to be pretermitted by future events. Rather than delaying the inevitable need to address these issues, judicial economy is best served by addressing the issues on their merits in this appeal." *Parker v. Lambert*, 206 S.W.3d 1, 4 (Tenn. Ct. App. 2006). Likewise, we conclude that judicial economy is best served by considering the merits of this appeal because these issues will also not be pretermitted by future events. Accordingly, in the interests of judicial economy and expediting a decision on the merits of this case, we conclude that good cause exists for us to suspend the finality provisions of Rule 3 of the Tennessee Rules of Appellate Procedure pursuant to Rule 2 and hear this appeal.

B.

Beneficiary claims that items that belonged to her as a tenant by the entirety were erroneously admitted into the estate and sold to satisfy the estate's expenses. She believes that this case should be remanded for entry of a court-approved inventory, detailing which items were subject to sale at the auction and which items were not subject to estate administration. Beneficiary acknowledges that she did not pursue the entry of a detailed inventory until after the property had been sold because she, along with Executrix, believed that "litigation over whether the property was held as tenants by the entireties was unnecessary" because the "parties anticipated that the property would be distributed in kind." She alleges that the issue did not become apparent until Executrix sold the property to satisfy the estate's expenses. Executrix responds that Beneficiary has waived review of any issues relating to an inventory of the estate because Beneficiary failed to appeal this issue following the entry of either the October Order or the January Order.

Pursuant to Decedent's will, Beneficiary was the only intended heir and stood to inherit any property that did not already belong to her as a tenant by the entirety. Thus, the property at issue belonged to Beneficiary, whether the items passed through the estate or whether the items should have been classified as her property. There were also no claims against the estate that would have limited Beneficiary's recovery. However, once this case was initiated, the estate became subject to claims for administrative expenses and attorney fees. We acknowledge that the record does not contain an order delineating which items passed through the estate to Beneficiary and which items belonged to Beneficiary and were not subject to estate administration. The record reflects that Beneficiary raised the issue of ownership but never pursued the entry of a detailed inventory even after the court entered the October Order, which did not clearly denote which items were hers and which items

-11-

belonged to the estate. Beneficiary did not take any action on this issue until the property had already been sold. Beneficiary attempts to explain this deficiency by asserting that she was not aware of the importance of the issue and that she believed the October Order and the January Order were not final orders that were capable of appeal.

Contrary to Beneficiary's assertion, the October Order was a final order that resolved all of the claims between the parties, ordered payment of the administrative expenses, and set a closing date for the estate. Tenn. R. App. P. 3(a). At that point, Beneficiary was put on notice that some items that allegedly belonged to her as a tenant by the entirety were subject to the estate's administrative expenses. Yet, she failed to file a notice of appeal from the final order. Moreover, when Executrix sought to sell all of the items in the estate, Beneficiary merely attempted to enjoin the auction and did not assert that certain items were not subject to estate administration because they belonged to her as a tenant by the entirety. The January Order in which the trial court approved the auction was also a final order that resolved all of the claims between the parties and ordered the scheduled auction of her allegedly private property to proceed. Tenn. R. App. P. 3(a). Yet, Beneficiary failed to file a notice of appeal. In fact, Beneficiary did not raise any issues regarding her ownership of the property until she filed her petition for damages, 45 days after the January Order was entered and 18 days after the proceeds from the auction had been distributed to Executrix. "As a general rule, a trial court's judgment becomes final thirty days after its entry unless a timely notice of appeal or a specified post-trial motion is filed." *State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn. 1996) (citing Tenn. R. App. P. 4(a) and (c); *State v. Moore*, 814 S.W.2d 381, 382 (Tenn. Crim. App. 1991)). "The [30-day] time limit for filing a notice of appeal is *mandatory* and *jurisdictional* in civil cases." *Albert v. Frye*, 145 S.W.3d 526, 528 (Tenn. 2004) (emphasis added). With all of the above considerations in mind, we conclude that this issue is not properly before this court.

## C.

Beneficiary asserts that Executrix breached her fiduciary duty to the estate by failing to negotiate a commercially reasonable fee with the Auction Company and by negligently damaging the property prior to the auction. She contends that Executrix's wasteful management resulted in a diminution in value of the estate and that Executrix's recovery of expenses should be limited to represent the diminution. She also argues that Executrix was not entitled to recover attorney fees because the services would not have been required if Executrix had simply agreed that the property belonged to Beneficiary as a tenant by the entirety. Executrix responds that she did not breach her fiduciary duty and that Beneficiary offered no countervailing proof to contest her assertion that the fees charged by the Auction Company were commercially reasonable.

Relative to Executrix's organization of the auction, the personal representative of an estate "occupies a fiduciary position" and "must deal with the estate and each of its beneficiaries in good faith." *McFarlin v. McFarlin*, 785 S.W.2d 367, 369 (Tenn. Ct. App. 1990) (citing *Mason v. Pearson*, 668 S.W.2d 656, 663 (Tenn. Ct. App. 1983); *Baker v. Baker*, 142 S.W.2d 737, 750 (Tenn. Ct. App. 1940)). "Like any other fiduciary, he [or she] is required to exercise the same degree of diligence and caution that reasonably prudent business persons would employ in the management of their affairs." *Id.* at 369-70 (citations omitted). However, the personal representative's "performance should be judged in light of the circumstances existing at the time." *Id.* at 370 (citing *Young v. Phillips*, 93 S.W.2d 634, 636 (Tenn. 1936)).

As previously stated, once the estate was admitted to probate by Beneficiary, Executrix was tasked with ensuring that the estate expenses were paid. Pursuant to the Tennessee Code and Decedent's will, Executrix was permitted to sell the personalty in the estate to satisfy any outstanding debts and administrative expenses. Indeed, Beneficiary does not allege that Executrix did not have the authority to sell the items. Instead, she asserts that Executrix's organization of the auction was lacking. The manner in which personalty may be sold is delineated in the Tennessee Code, which provides,

> Unless otherwise directed by the will and unless the specific personal property is the subject of a bequest, the personal representative of a testate or intestate estate may, in the personal representative's discretion, sell the personal property of the decedent at public or private sale, *for cash or on terms, in such manner and for such prices as the personal representative may deem advisable*; but the personal representative shall not make a private sale to the personal representative, to business associates, to members of the personal representative's immediate family or to their agents without court approval or the written consent of all residuary distributees of the estate. The personal representative may employ persons or firms to conduct the sale and shall receive credit for all reasonable expenses of the sale in the final accounting.

Tenn. Code Ann. § 30-2-303 (emphasis added). Beneficiary offered no evidence to establish that the auction could have been organized in a less expensive manner. The testimony reflected that the estate contained a plethora of items that were difficult to organize and transport. While Beneficiary offered testimony to establish that some items had been damaged in transport, the testimony was contradicted and rejected by the trial court. This court affords "great weight" to a trial court's assessment of a witness's credibility. *In re R.M.S.*, 223 S.W.3d 240, 265 (Tenn. Ct. App. 2006). Additionally, several items were admittedly stored outside and exposed to the elements for a period in excess of ten years.

With all of these considerations in mind, we affirm the trial court's holding that Executrix did not breach her fiduciary duty to the estate as alleged by Beneficiary.

Relative to Executrix's request for expenses and attorney fees, we acknowledge that fees may be disallowed if the representative failed to represent the estate in a competent manner or incurred expenses that were unnecessary. *In re Estate of Wallace*, 829 S.W.2d 696, 705 (Tenn. Ct. App. 1992); *McFarlin*, 785 S.W.2d at 372 (citations omitted). Having concluded that Executrix did not breach her fiduciary duty, we further conclude that the expenses should not be disallowed or reduced and uphold the court's approval of the attorney fees. *See Wallace*, 829 S.W.2d at 703 (providing that attorney's fees can be charged as an administrative expense if the fees were required, reasonable, and inured to the benefit of the entire estate) (citations omitted); *see also McFarlin*, 785 S.W.2d at 372-73 (disallowing the personal representative's fee and attorney fees and surcharging him for any penalties and interest taxed to the estate as a result of his negligence) (citations omitted).

D.

Executrix asserts that Beneficiary's appeal is frivolous and that she is entitled to damages in the form of attorney fees and costs for having to defend against the appeal. Tennessee Code Annotated section 27-1-122 provides for an award of damages, including attorney fees, when an appeal is determined to be frivolous. To find an appeal frivolous, the appeal must be wholly without merit and lacking in justiciable issues. *See Davis v. Gulf Ins. Grp.*, 546 S.W.2d 583, 586 (Tenn. 1977); *Indus. Dev. Bd. of Tullahoma v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995). An appellate court's decision on this issue is discretionary, and this court is generally reluctant to award such damages because we do not want to discourage legitimate appeals. *Whalum v. Marshall*, 224 S.W.3d 169, 180-81 (Tenn. Ct. App. 2006). Following our review, we respectfully deny Executrix's request for attorney fees on appeal.

## V. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Patricia R. James.

_____
JOHN W. McCLARTY, JUDGE

-14-