IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
April 25, 2017 Session

**IN RE ESTATE OF MARJORIE ROSS POTTER**

**Appeal from the Probate Court for Shelby County**
**No. D-5249   Karen D. Webster, Judge**

_____

**No. W2016-01809-COA-R3-CV**

_____

Beneficiary of decedent's estate appeals the judgment holding that the executor did not breach his fiduciary duty in administering the estate and the award of a fee to the executor.  Upon a thorough review of the record, we affirm the decision of the Probate Court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Affirmed**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which ARNOLD B. GOLDIN and KENNY W. ARMSTRONG, JJ., joined.

Patrick B. Mason and Steven C. Ebbers, Germantown, Tennessee, for the appellant, Steven Ross Potter.

Daniel J. Mickiewicz, Collierville, Tennessee, for the appellee, Carey Potter.

OPINION

## I.   PROCEDURAL HISTORY

The parties to this appeal, Steven Potter and Carey Potter, are the sons of Marjorie Ross Potter, who died a resident of Memphis, Tennessee, on May 7, 2008.  On June 19, 2008, Ms. Potter's will was admitted to probate; Carey Potter was appointed as the executor of her estate.[1]  Numerous petitions relating to the administration of the estate were filed by the parties over the course of several years.  This appeal involves the rulings on three of those petitions.

---

[1] Carey Potter died on December 25, 2014, during the course of the administration of the estate; his testimony at the hearing referenced herein was presented through his evidentiary deposition taken on February 11, 2014.  His estate is party to this appeal.

The first petition at issue is a Petition for Executor Fee and Expenses ("Petition for Fees"), filed on August 20, 2013, in which Carey Potter and his counsel requested an award of fees for services performed in the administration of the estate. The second petition is a Petition to Direct the Executor to Distribute Undistributed Tangible Personal Property and Provide Access to Duplicable Personal Property ("Petition to Distribute Property") filed on October 22, 2013, by Steven Potter, in which he requested the court to order Carey Potter to distribute certain family photographs, quilts, and memorabilia to him. The third petition, styled "Petition for Damages due to Executor, Carey Potter's Breaches of Fiduciary Duty" ("Petition for Damages" herein), was filed on April 10, 2014; in this petition, Steven Potter alleged that Carey Potter breached his fiduciary duty as Executor in numerous ways and sought monetary damages.

On June 3-4, 2015, the Probate Court held a hearing on the petitions. On October 7 the Probate Court entered a thirty-seven page Memorandum Opinion in which it made extensive findings of fact and conclusions of law, including citations to the record and hearing transcript, holding, *inter alia*, that (1) Carey Potter did not breach his fiduciary duties, (2) the claims raised in the Petition to Distribute Property had been previously raised and resolved in an order entered July 26, 2011, and, consequently, were barred by *res judicata*, and (3) that Carey Potter was entitled to a fee of $50,000.[2]

Steven Potter appeals. He contends that the trial court abused its discretion in failing to find that Carey Potter breached his fiduciary duty, "ignoring the breaches of fiduciary duty" and awarding Carey Potter a fee, by not granting him damages based on Carey Potter's breach of fiduciary duty, and by concluding that the Probate Court's July 26, 2011 Order had a *res judicata* effect on his Petition to Distribute Property.

## II.    STANDARD OF REVIEW

A trial court abuses its discretion when it fails to consider the applicable law and relevant facts in reaching its decision. *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth*. 249 S.W.3d 346, 358 (Tenn. 2008). An abuse of discretion occurs if a trial court causes an injustice to a party by "(1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).[3] Review of the trial court's findings of fact is *de novo* upon the record,

---

[2] The court ordered the executor's fee to be paid to Carey Potter's estate.

[3] Our Supreme Court has described the abuse of discretion standard of review:

> The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal. *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009); *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000). It reflects an awareness that

accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Kaplan v. Bugalla*, 188 S.W.3d 632, 635 (Tenn. 2006). Review of the trial court's conclusions of law is *de novo* with no presumption of correctness afforded to the trial court's decision. *See Kaplan*, 188 S.W.3d at 635.

## III. DISCUSSION

### A. BREACH OF FIDUCIARY DUTY

Steven Potter asserts that Carey Potter breached his fiduciary duty by "(1) not making the required distribution on a timely basis, (2) not handling tax matters properly as the fiduciary of the estate, and (3) not distributing all of the decedent's tangible personal property in a fair and unbiased manner." Seventeen pages of the Probate Court's Memorandum Opinion were devoted to resolving the allegations that Carey Potter breached his fiduciary duty.

An executor of an estate occupies a fiduciary position. *Mason v. Pearson,* 668 S.W.2d 656, 663 (Tenn. Ct. App. 1983). "As such, the executor must deal with the beneficiaries in utmost good faith and 'exercise the same degree of diligence and caution that reasonably prudent business persons would employ in the management of their own affairs.'" *In re Estate of Ladd*, 247 S.W.3d 628, 637 (Tenn. Ct. App. 2007) (quoting *McFarlin v. McFarlin,* 785 S.W.2d 367, 369-70 (Tenn. Ct. App. 1990)).

> [A]n executor who acts reasonably and in good faith while carrying out his duties will be shielded from liability if his judgment simply turned out to be wrong in light of subsequent events . . . [a]n executor who fails to competently, prudently, and reasonably discharge his duties as required by

---

the decision being reviewed involved a choice among several acceptable alternatives. *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 708 (Tenn. Ct. App. 1999). Thus, it does not permit reviewing courts to second-guess the court below, *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 223 (Tenn. Ct. App. 1999), or to substitute their discretion for the lower court's, *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). The abuse of discretion standard of review does not, however, immunize a lower court's decision from any meaningful appellate scrutiny. *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002).

*Id*. The *Beecher* Court directs appellate courts to review a lower court's discretionary decision to determine:

(1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions.

*Beecher*, 312 S.W.3d 515, 524.

3

law, however, finds no protection in his lack of judgment as viewed in hindsight.

*In re Estate of Ladd*, 247 S.W.3d at 637 (citing 2 JACK W. ROBINSON, SR. & JEFF MOBLEY, PRITCHARD ON WILLS AND ADMINISTRATION OF ESTATES § 734, at 328-29 (5th ed.1994); *McFarlin*, 785 S.W.2d at 372. However, "courts are cautious not to hold executors liable upon slight grounds." *In re Estate of Ladd*, 247 S.W.3d at 637 (citing 2 PRITCHARD § 734, at 328). "In order to recover for breach of fiduciary duty, a plaintiff must establish: (1) a fiduciary relationship, (2) breach of the resulting fiduciary duty, and (3) injury to the plaintiff or benefit to the defendant as a result of that breach." *Ann Taylor Realtors, Inc. v. John N. Sporup, et al.*, No. W2010-00188-COA-R3-CV, 2010 WL 4939967 at *3 (Tenn. Ct. App. Dec. 3, 2010) (citing 37 C.J.S. Fraud § 15 (2008)).

### i.    Timeliness of Distributions

The law favors the prompt administration of estates. *Burris v. McConnell*, 187 Tenn. 489, 496, 216 S.W.2d 10, 12 ([Tenn.] 1949). Accordingly, an executor has a duty to marshal and collect the estate's assets within a reasonable time. *Campbell v. Miller*, 562 S.W.2d 827, 832 (Tenn. Ct. App. 1977); *Price v. Price*, 37 Tenn. App. 690, 694–95, 269 S.W.2d 920, 922 ([Tenn. Ct. App.] 1954); [2 H. Phillips & J. Robinson, ]Pritchard [on Wills and Administration of Estates] § 716 [(4th ed. 1984)]. An executor must also discharge its statutory obligations in a timely manner. *See Williams v. Thornton*, 160 Tenn. 229, 234, 22 S.W.2d 1041, 1042 ([Tenn.] 1930); *Love v. First Nat'l Bank*, 646 S.W.2d 163, 166 (Tenn. Ct. App. 1982); *State ex rel. Burrow v. Cothron*, 21 Tenn. App. 519, 529–30, 113 S.W.2d 81, 87 (Tenn. Ct. App. 1937). Finally, an executor must distribute the estate in a timely manner and close its administration as quickly as possible. Pritchard § 718.

*McFarlin*, 785 S.W.2d at 370.

The Probate Court concluded that Carey Potter "did not breach his fiduciary duty by not expeditiously distributing the Estate assets to [Steven Potter]." Steven Potter contends that Carey Potter breached his fiduciary duty by failing to make any monetary distributions until August 20, 2013, more than five years after the estate was opened.

Steven Potter testified that in May 2009 he received a letter from counsel for the estate offering him a distribution of $304,850 if he would sign a final receipt and waiver. He read portions of a letter he wrote the estate's counsel in response in which he stated that "I question the authority of the executor and [the estate's attorney] to withhold the $304,850 pending my signature of the receipt of waiver," and he had "no intention of

4

waiving the filing of a final settlement." He testified that he "wanted everything to be completed before I signed anything."

Carey Potter testified that there were several reasons why he did not make a distribution until 2013: that he was never advised by counsel for the estate that he needed to make a distribution; that "as an executor you're supposed to make sure that all administrative expenses are paid before you distribute money, as far as you have to hold back enough to make sure the administrative fees are going to be paid"; that "I had no concept of how long this estate would be open. I had no way of predicting how long the estate would be opened, and I have no way of predicting what the final administrative fees would be"; and that "I wasn't convinced that there was going to be any money left over after all this litigation because it's still ongoing and it may go on for years."

The Probate Court held that it was reasonable for Carey Potter to withhold a distribution of cash to Steven Potter and that he acted in good faith in his distribution of estate funds in light of various facts: the ongoing litigation involving the estate, and the ancillary administrations taking place in Mississippi and Arkansas;[4] his reliance on the advice of counsel in not making a distribution; his "retain[ing] possession and control of the estate assets to insure adequate funds remained to cover the administration"; and Steven Potter's refusal to sign a receipt and waiver. The testimony and exhibits support the factual findings and the holding is in accordance with the law.[5]

### ii. Tax Matters

Steven Potter contends that Carey Potter breached his duty to properly attend to tax matters in four respects: (1) by failing to file a Form 1099 for funds paid to Reggie

---

[4] At the time of her death Ms. Potter owned interests in real property in Memphis, Arkansas, and Mississippi. In Paragraph A of Item III of her will, she devised the property in DeSoto County, Mississippi to Carey Potter; in Paragraph A of Item IV, Carey Potter was devised "all of my right, title and interest in certain lands in Cleburne County, Arkansas, together with improvements thereon, including the boat dock on Greer's Ferry Lake, and furniture, furnishings, appliances and contents therein." While the real property in Mississippi and Arkansas was devised to Carey Potter, in Paragraph B of Item III, Steven Potter was bequeathed "the sum of Seventy Thousand Dollars ($70,000). This amount represents the value he would have received had the tract of land devised in paragraph A above been sold in 2003," and in Paragraph B of Item IV, bequeathed "an amount in cash equal to the value of the property devised in paragraph A of this Item which value shall be the then current appraised value of said property as determined for Cleburne County Assessor and Board of Equalization purposes." The court found that the ongoing litigation included ancillary proceedings that had to be brought in Arkansas and Mississippi due to Steven Potter's refusal to sign receipts and waivers or releases.

[5] The Probate Court found that Steven Potter was represented by counsel, yet made no formal request for a distribution until 2013. Steven Potter argues that letters which were attached to a motion to alter or amend the judgment show there were formal requests for a distribution before 2013. These letters, however, were between Steven Potter's counsel and Carey Potter's counsel and did not invoke the supervisory power of the court.

Miller, a contractor engaged to help with cleaning out the homeplace prior to sale; (2) by failing to properly complete Form 1041, which required Steven Potter to pay income tax on money which he did not receive; (3) by failing to report the gain on the sale of the Amber Lane property as a capital gain for the estate; and (4) by failing to assist Steven Potter with respect to a notice he received from the IRS that he owed $100,000 in taxes. The Probate Court concluded that none of these acts amounted to a breach of fiduciary duty:

> [Steven Potter] also admitted under oath that in about two months, he received a revised penalty and interest form from the Internal Revenue Service about two months later. . . . At trial, [Steven Potter] testified that he was not required to pay the $100,000 tax bill. He also admitted that he is not certain from what computation the bill resulted or who caused the error. . . .
>
> Regarding the tax claims, [Carey Potter] argued that the estate suffered no loss due to his tax filings. He claimed that the Internal Revenue Service misread one of the Schedule K-1s for tax year 2008, which resulted in complications. . . . [Carey Potter] testified that if he had to guess why [Steven Potter] received a tax due bill of a large amount in 2012-2013, it was due to a mistake that the Internal Revenue Service made, as he did not make any mistakes on his form 1041. Should there have been a mistake, $206.52 is not a lot of money. . . . Tax filings were made for several years, but no objections were made until [Steven Potter] filed his Answer to [Carey Potter's] Petition for Fees filed in April 2014. . . .
>
> When looking to the tax issue, there may have been rules that were not strictly followed by the executor, such as entering the wrong amount on a line item; however, no economic harm or liability resulted to the Estate or [Steven Potter] from those errors. [Steven Potter] confirmed this via his testimony under cross examination. . . . Even the tax bill that was mailed to [Steven Potter] was not required to be paid. . . .
> * * *
> Under the circumstances of this case, especially given the fact that no damage resulted from the slight errors [Carey Potter] may have made on the various tax forms, this Court concludes that [Carey Potter] acted reasonabl[y] and in good faith in fulfilling his fiduciary duty with respect to filing taxes.

The testimony of Carey Potter and Steven Potter fully supports the court's findings.

As noted earlier, in order to recover for breach of fiduciary duty, a plaintiff must establish a fiduciary relationship, a breach of the resulting fiduciary duty, and injury to the plaintiff. *Ann Taylor Realtors, Inc.*, 2010 WL 4939967 at *3. Here, the evidence shows, and the court concluded, that no damage resulted to either the estate or Steven

Potter; accordingly, the holding that Carey Potter did not breach his duty with respect to tax matters is consistent with the facts and applicable law.

### iii.    Distribution of Personal Property

Steven Potter next asserts that Carey Potter breached his fiduciary duty in the manner in which the personal property in the estate was distributed. In his brief, he does not explain the manner in which he contends that the distribution constituted a breach of fiduciary duty but focuses on his contention that the court erred in holding that the Petition to Distribute Property he filed on October 22, 2013, was barred by *res judicata* because the concerns he raised had been resolved in an order entered July 26, 2011. We begin our analysis with a discussion of that order.

At the hearing on Steven Potter's petition filed October 22, 2013, Carey Potter and Steven Potter testified that they divided their mother's personal property using several different methods, and that several attempts were made to divide the personal property in accordance with her will.[6] However, Steven Potter was unsatisfied with Carey Potter's efforts and filed the Petition to Remove the Executor in September 2009, in which he alleged that Carey Potter's distribution of the personal property was deficient in numerous ways; he requested that the court "remove the Executor and appoint the Petitioner Executor, pursuant to the Last Will & Testament of the decedent, or as alternatives, appoint an impartial Successor Personal Representative or an arbitrator to redistribute the property." The court ordered the parties to attend mediation, which was unsuccessful; the court then ordered that the parties prepare a list of disputed items of personal property so that an auction could be held on those items. The parties agreed to a list of items, and the auction was held. Following the auction, the court heard argument on the petition and entered an order on July 26, 2011, holding in pertinent part:

---

[6] Item II of Ms. Potter's will distributed the personal property as follows:

> I give and bequeath all household furniture, furnishings, utensils, equipment, pictures, books, chinaware, silverware, ornaments, jewelry, clothing, athletic equipment, automobiles and articles of a purely personal nature (other than my household furniture and furnishings located in my lake house in Cleburne County, Arkansas, and not intending to include in this Item any money, stocks, bonds or other property of a commercial nature) owned by me at the time of my death, together with any insurance policies thereon, in equal shares to such of my sons, CAREY EARL POTTER and STEVEN ROSS POTTER, as shall survive me, or all to the survivor if only one of them survives me; provided, however, if my son, CAREY EARL POTTER, does not survive me, then I give and bequeath his share of such property to my daughter-in-law, TERESA RAMSEY POTTER, if she survives me, and if my son, STEVEN ROSS POTTER, does not survive me, then I give and bequeath his share of such property to my grandson, DAVID ROSS POTTER, if he survives me.

1. That the parties have agreed that there were certain items in dispute which precipitated the filing of this Petition. The parties have agreed to a settlement of these items and these items are attached hereto as Exhibit 1.

2. That because the issue of the distribution of the remaining personal property was still in dispute, the Court ordered an auction whereby all items were brought into the Courtroom and the Court auctioned each item between the brothers, Steven Ross Potter and Carey Potter. Before the auction, it was determined and agreed by the parties that the items already in the possession of Steven Ross Potter, were valued at over $4,000.00 more than the items in possession of Carey Potter.

3. That the Court conducted the auction of personal items of the decedent in the courtroom and at the end of the auction, the Petitioner, Steven Ross Potter and the Respondent, Carey Potter, were even.

In the order under appeal, the court found "that actual distribution of many items occurred, but the process was continuing due to the circumstances and the relationship of the Parties in this case." Based in part on Steven Potter's testimony that Carey Potter "tried, economically, to equally divide the estate . . . and that [Steven] received [Steven's] top three choices of items in almost every room listed in the inventory" and a letter that Steven Potter sent to Carey Potter prior to their Mother's death in which Steven stated "I've made attempts to repair our relationship in the past years but you and Teresa are not interested. I have ceased further attempts"; the court found that "no attempts made by [Carey Potter] would have qualified as a fair and equitable distribution of the tangible personal property in [Steven Potter]'s mind." The court concluded that Carey Potter acted reasonably in distributing the decedent's personal property:

Under these circumstances, this Court finds that Respondent put forth a good faith effort in distributing the tangible personal property of this Estate, albeit with the assistance of the Court. Thus, this Court concludes that there was not a breach of fiduciary duty on the part of the Executor for failing to make distributions of the tangible personal property.

We have reviewed the testimony and other evidence cited by the court and the parties and conclude that it fully supports the court's factual findings and holding that Carey Potter acted reasonably in distributing the personal property.

After disposing of the specific concerns raised with respect to the allegations of breach of fiduciary duty, the court summarized its findings:

. . . This Court must note that with respect to Respondent's handling of his mother's estate, the services he provided, as well as his knowledge of the

8

responsibilities as a fiduciary, far exceed that of many other persons who provide services in this Court as fiduciaries of estates.

This Court finds that there is nothing in the evidence that suggests that Respondent failed to exercise the required degree of diligence and caution that a reasonably prudent business person would use in the management of his own affairs, or that Respondent failed to act in good faith. Therefore, this Court concludes that under all of the circumstances in this case, Respondent acted reasonably and in good faith; and as such, Respondent did not violate any of his fiduciary duties to the Decedent's Estate or to Petitioner.

Upon our thorough review of the record, we conclude that the determination that Carey Potter did not breach his fiduciary duty is fully supported by the evidence and in accordance with applicable law; the court did not abuse its discretion in so holding.

### iv.    Damages

Steven Potter argues that he has incurred litigation expenses as the result of Carey Potter's breaches of his fiduciary duty, and those litigation expenses should be allocated to Carey Potter's estate. In light of our affirmance of the determination that Carey Potter did not breach his fiduciary duty, there is no liability for damages; we affirm the trial court's holding in this regard.

### B. STEVEN POTTER'S PETITION TO DISTRIBUTE PROPERTY

In the Petition to Distribute Property Steven Potter requested, *inter alia*, access to and division of all of decedent's photographs and files and distribution of two quilts "which were located at the Decedent's home and on the bed in which [Steven Potter] slept when he visited Decedent's homeplace." The court concluded the doctrine of *res judicata* applied, and the July 26, 2011 Order barred the claims raised in the petition.[7] Steven Potter asserts that the court erred in holding that the claims were barred by *res judicata*; he argues that the July 26, 2011 Order was not a final judgment and did not dispose of the Petition to Distribute Property "on the merits."

---

[7] In holding that *res judicata* applied, the court stated:

> If there had been a problem with the distribution, then it was incumbent upon Petitioner to either motion the Court to alter or amend the July 26, 2011 judgment or to appeal that judgment within the appropriate time. From the record it appears that Petitioner sought neither of these actions; therefore, that Order regarding the distribution of the Decedent's tangible personal property stands valid and bars this action.

*Res judicata* "bars a second suit between the same parties or their privies on the same claim with respect to all issues which were, or could have been, litigated in the former suit." *Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012) (citing *Creech v. Addington*, 281 S.W.3d 363, 376 (Tenn. 2009); *Richardson v. Tennessee Bd. of Dentistry*, 913 S.W.2d 446, 459 (Tenn. 1995)). A party "asserting a defense predicated on res judicata . . . must demonstrate (1) that the underlying judgment was rendered by a court of competent jurisdiction, (2) that the same parties or their privies were involved in both suits, (3) that the same claim or cause of action was asserted in both suits, and (4) that the underlying judgment was final and on the merits." *Jackson*, 387 S.W.3d at 491 (citing *Lien v. Couch*, 993 S.W.2d 53, 56 (Tenn. Ct. App. 1998)). This Court reviews "[a] trial court's decision that a claim is barred by the doctrine of *res judicata* or claim preclusion . . . de novo on appeal without a presumption of correctness." *Jackson*, 387 S.W.3d at 491 (citing *In re Estate of Boote,* 198 S.W.3d 699, 718 (Tenn. Ct. App. 2005)). In resolving this matter, we note the unique nature of probate proceedings. "A proceeding for probate is not an action between parties, but an action *in rem* involving the distribution of the *res*," i.e., the estate. *Green v. Higdon*, 870 S.W.2d 513, 520 (Tenn. Ct. App. 1993) (citing *Fransioli v. Podesta*, 134 S.W.2d 162, 165 (Tenn. 1939)).

Ms. Potter's will instructed that "all household furniture, furnishings, utensils, equipment, pictures, books, chinaware, silverware, ornaments, jewelry, clothing, athletic equipment, automobiles and articles of a purely personal nature" were to be divided "in equal shares" between her sons, Carey and Steven Potter. The July 26, 2011 order was entered on the matters raised in Steven Potter's Petition to Remove Carey Potter as Executor, including the division of personal property. An inventory had been prepared and filed with the court on November 4, 2009. As noted earlier in this opinion, the order recited that the parties agreed to settle specific items at issue, to the valuation of the property which had been previously divided, and to the items remaining for distribution. The order concluded that "the Steven Ross Potter and Carey Potter are even in their receipt of personal property."

The July 26, 2011 order was final inasmuch as it resolved the distribution of personal property in the estate; as noted by the trial court, no motion to amend the judgment or effort to appeal was filed. Accordingly, the court did not err in concluding that the claims raised in Steven Potter's Petition to Distribute Property were barred by *res judicata*.

### C. CAREY POTTER'S PETITION FOR EXECUTOR FEE AND EXPENSES

Steven Potter argues that the Probate Court abused its discretion in awarding a fee of $50,000 to Carey Potter; he argues that the fee is unjustified in light of Carey Potter's breaches of his fiduciary duty. In light of our determination that Carey Potter did not breach his fiduciary duty, we find no error in the probate court's award of a fee to the executor or the amount thereof.

## IV. CONCLUSION

For the foregoing reasons the judgment of the trial court is affirmed in all respects.

_____

RICHARD H. DINKINS, JUDGE